## Case No. 16,983.

### In re VOGEL.

[2 N. B. R. 427 (Quarto. 138); 1 Chi. Leg. News, 210.]¹

District Court, S. D. New York. March. 1869.

BANKRUPTCY — VOLUNTARY PROCEEDINGS — PROPERTY VESTING IN ASSIGNEE—REPLEVIN BY CREDITORS.

1. When a voluntary petitioner in bankruptcy files his petition in due form, he becomes eo instante a bankrupt, so far as the property named in his inventory is concerned, and said property is in the custody of the bankruptcy court.

[Cited in Re Askew, Case No. 585.]
[Cited in brief in Weeks v. Prescott, 53 Vt. 69.]

2. Where the sheriff executed processes in certain replevin suits instituted by creditors of such a bankrupt, and took property in his possession, and set forth in his inventory, and delivered the same to claimants, held, that the action of the sheriff was unauthorized, and claimants ordered to deliver the property to the assignees in bankruptcy; or, if the same had been sold, to pay the value thereof to the said assignees, and attachment to issue in default thereof.

[Cited in Re Clark, Case No. 2,798; Re Lake, Id. 7,992; Re Brinkman. Id. 1,884; Re Dole. Id. 3,965; Re Ulrich. Id. 14,328. Approved in Re Steadman. Id. 13,330. Cited in Re Hufnagel, Id. 6,837; Re Irving, Id. 7,073.]
[Distinguished in Clifton v. Foster, 103 Mass. 235. Cited in brief in Leighton v. Harwood. 111 Mass. 69; Williams v. Merritt, 103 Mass. 187.]

[In the matter of Henry Vogel, a bankrupt.]

BLATCHFORD, District Judge. This is a case of voluntary bankruptcy. The petition

² [From 3 N. B. R. 198 (Quarto, 49).]
¹ [Reprinted from 2 N. B. R. 427 (Quarto, 138), by permission. 1 Chi. Leg. News, 210, contains only a partial report.]

was filed on the 5th of October, 1868, at noon. The petition is drawn according to form No. 1, and states, among other things, that the petitioner "is willing to surrender all his estate and effects for the benefit of his creditors," and that the verified Schedule B, annexed to the petition, "contains an accurate inventory of all his estate, both real and personal, assignable under the provisions of the bankrupt act." There is also annexed to the petition a verified schedule of the petitioner's debts. The following are named among such debts: To Bowers, Beekman & Co., of New York City, merchants, two thousand nine hundred and sixty-four dollars and ninety-one cents. debt contracted in New York City, in 1868. on open account for goods sold and delivered to the petitioner: to Thomas & Co., of New York City, merchants. eight hundred and seventy-eight dollars and sixteen cents, debt contracted in New York City. in 1868. on open account for goods sold and delivered to the petitioner; to Stanfield. Wentworth & Co., of New York City, merchants. one thousand seven hundred and eighteen dollars and seventy-eight cents, debt contracted in New York City, in 1868. on promissory note and open account for goods sold and delivered to the petitioner; to Kendall. Opdyke & Co., of New York City, merchants. three thousand three hundred and sixty-eight dollars and thirty-three cents, debt contracted in New York City, in 1868. on promissory notes and open account for goods sold and delivered to the petitioner; and to W. W. Huntingdon & Co., of New York City. merchants. one thousand two hundred and fifty dollars and eighty-eight cents. debt contracted in New York City, in 1868, on open account for goods sold and delivered to the petitioner. In the inventory of the petitioner's estate, Schedule B. to the petition, is the following item: "Stock in trade in my business of cloth. at No. 39 Murray street. N. Y., about eight thousand five hundred dollars." On the 6th of October, 1868, the petitioner surrendered as his property, to Register Dayton. the register to whom the case was referred, a stock of goods and merchandise situated in the petitioner's store. at No. 39 Murray street. in the city of New York. On the 6th of October. 1868. the sheriff of the city and county of New York. under process of replevin. brought against the petitioner in the superior court of New York. by the said Bowers. Beekman & Co., who claimed as owners. took from the said store of the petitioner goods and merchandise. being nineteen pieces of cassimere of the value of seven hundred and twenty-one dollars and fourteen cents. and delivered the same to said Bowers. Beekman & Co. The process to the sheriff in that case stated that the petitioner claimed to have purchased the said goods, but that he had obtained them fraudulently, and under the mere color of purchasing them. On the 6th of October, 1868. the said sheriff, under process of replevin, brought against the petitioner in the said supreme court by the said Thomas & Co., who claimed as owners. took from the said store of the petitioner goods and merchandise. being twenty-one pieces of cassi-

mere, of the value of seven hundred and seventeen dollars and eighty-one cents, and delivered the same to the said Thomas & Co. The process to the sheriff in that case stated that the petitioner claimed to have purchased the said goods from the said Thomas & Co., but that said alleged purchase was procured by fraud on the part of the petitioner, and that no title to the said goods passed. On the 6th of October, 1868, the said sheriff, under process of replevin in the said supreme court by the said Stanfield, Wentworth & Co., who claimed as owners, took from the said store of the petitioner goods and merchandise, being thirty pieces of cloth, of the value of eight hundred and thirty-five dollars and twenty-seven cents, and delivered the same to the said Stanfield, Wentworth & Co. The process to the sheriff in that case stated that the petitioner claimed to have purchased the said goods from the said Stanfield, Wentworth & Co., but that the defendant obtained the same fraudulently and under the mere color of a purchase. On the 7th of October, 1868, the petitioner was duly adjudicated a bankrupt. On the 10th of October, 1868, the said sheriff, under process of replevin, brought against the bankrupt in the said supreme court, by the said Kendall, Opdyke & Co., who claimed as owners, took from the store of the bankrupt and from the said register goods and merchandise, being thirteen pieces of cassimere of the value of four hundred and sixty dollars and eighty-nine cents, and delivered the same to the said Kendall, Opdyke & Co. The process to the sheriff in that case stated that the bankrupt claimed to have purchased the said goods from the said Kendall, Opdyke & Co., but that such purchase was procured by fraud on the part of the bankrupt, and that no title to the said goods passed. On the 10th of October, 1868, the said sheriff, under process of replevin, brought against the bankrupt, by the said W. W. Huntingdon & Co., who claimed as owners, took from the said store of the bankrupt and from the said register, goods and merchandise, being eight pieces of cassimere and twelve pieces of cloth, of the aggregate value of six hundred and fifty-eight dollars and six cents, and delivered the same to the said W. W. Huntingdon & Co. The process to the sheriff in that case stated that the bankrupt claimed to have purchased the said goods from the said W. W. Huntingdon & Co., but that said alleged purchase was procured by fraud on the part of the bankrupt, and that no title to the goods passed. At the respective times, when the sheriff took the goods on the two occasions on the 10th of October, 1868, he was accompanied in each case by a person who professed to represent the plaintiffs in the process, which person selected and identified the goods called for by the process, and the register informed such persons at and before the times when the goods were taken, that he was in possession of them as register in bankruptcy; that he disputed their right to take the property, and that if they should do so it would be at their peril. Assignees in bankruptcy of the bankrupt have been appointed. They now present to the court a petition, setting forth the foregoing facts, that they have demanded from the five several parties before named, the goods so taken by the sheriff, but such parties have not delivered them to the assignees, and that the property taken in each case was the property of the bankrupt. The prayer of the petition is, that said parties be directed to deliver to the assignees the property so taken by them respectively, or that attachments for contempt issue against them severally for taking said property from the possession and control of this court. The only defence made to the petition, on the facts, is that the several plaintiffs in the replevin suits owned the property taken, and that it was not the property of the bankrupt.

It must be assumed, on the facts, that the goods replevied are a portion of the goods referred to in Schedule B to the bankrupt's petition, as the stock in trade in his business at No. 39 Murray street, N. Y., and as worth eight thousand five hundred dollars. The process in each one of the five cases states that the goods replevied were claimed to have been purchased by the bankrupt. The petition in bankruptcy has annexed to it the inventory of the bankrupt's estate, assignable under the act, and avers that he is willing to surrender all his estate and effects for the benefit of his creditors. Section 11 of the act [of 1867 (14 Stat. 521)] provides that "the filing of such petition shall be an act of bankruptcy, and such petitioner shall be adjudged a bankrupt." The same section provides that a warrant shall be forthwith issued to the marshal to publish and serve notices, stating, among other things, the issuing of the warrant, and that the transfer of any property by the debtor is forbidden by law. The thirty-eighth section provides that the filing of a petition for adjudication in bankruptcy by a debtor in his own behalf, upon which an order of adjudication may be issued, shall be deemed and taken to be the commencement of proceedings in bankruptcy under the act. Such order is form No. 5. The fourteenth section provides that the assignment of the estate of the bankrupt, made to the assignee in bankruptcy, "shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee." The fifteenth section provides that "the assignee shall demand and receive from any and all persons holding the same, all the estate assigned or intended to be assigned under the provisions of this act."

It is manifest from these provisions that when a voluntary petitioner in bankruptcy files his petition, in due form, he becomes eo instante a bankrupt, so far as any interference with the property named in his inventory is concerned, and that such property is thereby brought into the bankruptcy court, and placed in its custody and under its protection, as fully as if actually brought into the visible presence of the court. Being in the custody of the bankrupt court, no other court, and no person acting under any process from any other court, can, without the

permission of the bankruptcy court, interfere with it, and to so interfere is a contempt of the bankruptcy court. Peck v. Jenness, 7 How. [48 U. S.] 612, 625; Williams v. Benedict, 8 How. [49 U. S.] 107, 112; Wiswall v. Sampson, 14 How. [55 U. S.] 52, 66; Peale v. Phipps, Id. 368, 374; Taylor v. Corryl, 20 How. [61 U. S.] 583. 594–597; Freeman v. Howe, 24 How. [65 U. S.] 450; Buck v. Colbath, 3 Wall. [70 U. S.] 334. The property being in the bankruptcy court in specie, that court has ample jurisdiction conferred upon it by the bankruptcy act to adjudicate in regard to it. The question before this court now is, not who has the rightful title to this property, but whether the lawful possession of it by this court has been unlawfully interfered with. The second section of the act gives to this court jurisdiction of all suits at law or in equity which may or shall be brought, by any person claiming an adverse interest, against the assignee in bankruptcy, touching any property or rights of property of the bankrupt. transferable to or vested in the assignee. In this case the plaintiffs in the replevin suits claim an interest in this property adverse to the interest claimed by the assignees. The property, if it was the property of the bankrupt, was transferable to and vested in the assignees. It was embraced in the inventory annexed to the bankrupt's petition as properly assignable under the act, and the processes issued in the replevin suits stated that the bankrupt claimed to have purchased the property. Three of the processes stated that the bankrupt was in possession of the property, and the two processes which were executed on the 10th of October, 1868, stated that the property was in possession of the bankrupt "or his agents." Under these circumstances, no matter what the ultimate decision may be as to the real title to the property, it was properly included by the bankrupt in his petition, and was surrendered by him into the custody of this court by the filing of his petition.

It was urged that these replevin suits could be maintained under the twenty-fifth section of the act. That section provides that "whenever it appears to the satisfaction of the court that the title to any portion of an estate, real or personal, which has come into possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant and his agent or attorney as the court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds received in place of the estate disposed of; and the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any courts. But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action commenced at any time before the court orders the sale." Under this provision, the property may be recovered from the possession of the assignee by an action brought in a state court, before the commencement of the proceedings in bankruptcy, and to which the assignee is made a party under section 14; or by an action brought in the bankruptcy court or in the circuit court for the same district, under section 2 of the act. But an action of replevin brought in a state court to recover specific property, after such property has been taken into custody by the bankruptcy court, is not within the twenty-fifth section a "proper action." In re Barrow [Case No. 1,057]. So far as the decisions in the cases of In re Wylie [Id. 18,109] and In re Noakes [Id. 10,281] conflict with this view, they seem to me to be unsupported by law. The learned judge who decided the latter case, in saying, in his opinion, that a party who claims, as his own, property in the possession of an assignee in bankruptcy, must seek redress by the appropriate remedy in the courts of the state, overlooks entirely the provision of the second section of the act and the principle of the decisions of the supreme court before cited. If the jurisdiction of the state court had first attached to this property by its process in replevin, this court would not disturb the possession of the state court, or of the plaintiffs under it. But, as was said in the supreme court, in Buck v. Colbath, before cited, where property is in the custody of a court and "under its control for the time being," "no other court has a right to interfere with that possession unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises." "A departure from this rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction, deriving their powers from the same source; but how much more disastrous would be the consequences of such a course, in the conflict of jurisdiction between courts whose powers are derived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit."

In the present case there is no difference in any legal aspect between the three takings of goods on the 6th of October, 1868, and the two takings of goods on the 10th of October, 1868, although those taken on the latter day were so taken in defiance of the expressed opposition of the register. The goods were all placed in the custody of this court on the 5th of October, 1863, and were in its custody when they were taken. The several parties must, within ten days from the entry of an order on this decision, deliver to the assignees the identical goods so taken, or, if such goods have been sold by them, they must, within the same time, pay to the assignees the several values of such goods as stated in the petition, and which values are not controverted, namely: Bowers, Beekman & Co., seven hundred and twelve dollars and fourteen cents; Thomas & Co., seven hundred and seventeen dollars and eighty-one cents; Stanfield, Wentworth & Co., eight hundred and thirty-five dollars and twenty-seven cents; Kendall, Opdyke & Co., four

hundred and sixty dollars and eighty-nine cents; and W. W. Huntingdon & Co., six hundred and fifty-eight dollars and six cents. In default thereof attachments must issue as prayed for.

[See Cases Nos. 16,982 and 16,984.]