## AMERICAN FILE COMPANY & Another *v.* GARRETT & Another.

## SAYLES & Another *v.* GARRETT & Another.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF RHODE ISLAND.

Argued January 16th, 17th, 1884.—Decided January 28th, 1884.

*Assignee in Bankruptcy—Corporation.*

A, residing in Maryland, and a stockholder in a manufacturing corporation in Rhode Island, pledged with B, also residing in Maryland, as security for a debt due from A to B, bonds of the company secured by mortgage of all its property. The company became embarrassed and unable to pay its debts, and its stockholders became individually liable to its creditors. A became bankrupt, and B agreed with the assignee to receive the bonds and a sum of money in payment of A's debt, and to indemnify the assignee against loss or damage as holder of the stock. B then instituted proceedings to enforce the individual liability of other stockholders : *Held,* That, the agreement with the assignee was not an agreement to save A harmless against liability as stockholder ; that neither the assignee in bankruptcy nor the bankrupt's property in his hands was subject to the liability which attached to the stock, and that B assumed no liability which could be set up by a stockholder as a defence against his individual liability to B.

The American File Company was a manufacturing corporation created by a special act of the legislature of Rhode Island, passed in May, 1863, and carried on its business in the town of Lincoln, in that State.   The company purchased a patent under which the manufacture of files had before been carried on in the city of Baltimore, and the persons, among them one Allen A. Chapman, who sold the patent, took nearly half the stock of the company.

The business of the company was carried on at a loss.   About the beginning of the year 1870 it owed a large sum of money, which was evidenced by promissory notes of the company, indorsed by the stockholders in Rhode Island, and Chapman and other stockholders in Baltimore—all the stockholders being under the statutes of Rhode Island individually liable for the debts of the company by reason of its omission to file certain

statements respecting its business in the office of the clerk of the town. In this state of its affairs the company resolved to issue its bonds, to be secured by a mortgage on all its property, real and personal. They were to be offered to the stockholders in proportion to the stock held by them, and such as were not taken were to be disposed of in "the order of applicants." The bonds were issued accordingly. They were payable to bearer five years after January 1st, 1870.

The bonds for Chapman and the other Baltimore stockholders, for which Chapman had subscribed, were sent to him and charged against him on the books of the company, and the bonds were paid for by him by the surrender of a like amount of the promissory notes of the company. The notes so surrendered were the property of the firm of Kirkland, Chase & Co., merchants, of the city of Baltimore, of which Chapman was a member. Some of the Baltimore stockholders refused to subscribe for the bonds, and their share of them was taken by Chapman or his firm.

The firm of Kirkland, Chase & Co., on May 2d, 1872, borrowed of the firm of Robert Garrett & Sons, bankers, of the same city, $50,000, and pledged as security therefor certain promissory notes which were afterwards, on May 28th, withdrawn and a cargo of sugar, stored in a warehouse in Baltimore, was pledged in lieu thereof and the warehouse receipt deposited with Garrett & Sons. Besides the $50,000, Kirkland, Chase & Co. at this time owed Garrett & Sons more than $500,000, and it was the agreement between them that all securities pledged were to be held, not only for the specific loan for which they were pledged, but for the general balance due from the pledgers to the pledgees.

On September 12th, 1872, Kirkland, Chase & Co. failed, and the firm and each of its members were subsequently adjudicated bankrupts, and their property, copartnership and individual, was assigned for the benefit of their creditors.

On the day of the failure, Chapman informed Garrett & Sons that on May 30th, Kirkland, Chase & Co. had withdrawn and sold the cargo of sugar pledged as security for the loan of $50,000, and that bonds of the American File Company to the

amount of $81,500 had been substituted therefor, and handed to his son previous to September 12th to be delivered to them. On September 12th the bonds were delivered into the manual possession of Garrett & Sons in lieu of the cargo of sugar so withdrawn and sold.

The assignees in bankruptcy of Kirkland, Chase & Co. disputed the title of Garrett & Sons to these bonds and some other securities on the ground that their transfer was a fraudulent preference. The assignees and Garrett & Sons settled all their controversies growing out of the bankruptcy of Kirkland, Chase & Co. by an agreement in writing dated May 4th, 1874, whereby the assignees relinquished all claim upon the " collaterals" of every nature, or the proceeds thereof, held by Garrett & Sons on the debts due them by the bankrupts, and agreed to pay Garrett & Sons $5,000, and the latter relinquished all claim to dividends declared and to be declared on the estate of Kirkland, Chase & Co. by the assignees or their successors. The settlement also contained this stipulation :

" And said Robert Garrett & Sons likewise further agree, that whereas said assignees have been offered the sum of fifty cents in the dollar for certain bonds of the American File Company (now held by Messrs. Robert Garrett & Sons, which were received as collaterals from Messrs. Kirkland, Chase & Company), and an indemnification against loss or damage of any kind as holders of certain stock of said American File Company, as assignees of A. A. Chapman and Kirkland, Chase & Company, said Robert Garrett & Sons hereby agree to indemnify the said assignees against loss or damage of any kind as holders of the stock aforesaid ; and in consideration of said acts of said assignees, said Robert Garrett & Sons do also hereby agree to indemnify the said assignees and said estate of Kirkland, Chase & Company and the estate of A. A. Chapman against loss or damage of any kind for releasing their claim to the said bonds of the American File Company, now held by Messrs. Robert Garrett & Sons, and agree to hold said assignees and said estate harmless for said transfer and release."

Garrett & Sons, on June 23d, 1876, recovered a judgment in the Supreme Court of the State of Rhode Island against

the File Company on the bonds transferred to them by Chapman or the firm of Kirkland, Chase & Co., for the sum of $132,611.33, the principal and interest due on the same. At that time, by the statute law of Rhode Island, the creditors who recovered a judgment against a corporation whose stockholders were individually liable for its debts, could take out execution thereon and seize the persons and property of the stockholders in satisfaction thereof, in the same manner as on executions issued against them for their individual debts.

Before either of the cases brought up by these appeals was commenced, the affairs of Kirkland, Chase & Co. had been nearly settled and the bankrupts discharged. After the recovery of the judgment by Garrett & Sons, William F. Sayles and other Rhode Island stockholders, about November 9th, 1876, filed a bill in equity against them in the Supreme Court of Rhode Island to enjoin them from levying execution upon the persons or property of the complainants. The bill alleged that when the bonds of the File Company were issued in 1870, there was an agreement between the stockholders that the bonds were to be taken by them in proportion to the stock which they held respectively, and that they were to be a final payment of the debts of the company, relieving the stockholders from liability, and requiring the holders to look for payment of their bonds to the property which was mortgaged to secure them, or to the property of the company, and not to the individual liability of the stockholders; that Garrett & Sons had notice of this agreement when they acquired the bonds, and had no better right to enforce the individual liability of the stockholders than Chapman or Kirkland, Chase & Co., from whom they derived title; and that they, Garrett & Sons, had agreed to indemnify the assignees in bankruptcy of Chapman and Kirkland, Chase & Co., and thereby had discharged the complainants from any liability, if any such existed, by reason of said bonds, and that in equity and of right their said guaranty inured to the benefit of the complainants, and the court should enforce it in that suit, and thereby avoid the circuity of action which would ensue if the complainants

should call on the assignees for contribution, and they on Garrett & Sons for indemnity.

After this cause was put at issue by the answer of Garrett & Sons, and by the replication of complainants, it was removed to the Circuit Court of the United States for the District of Rhode Island.

· In the year 1877 an act was passed by the legislature of Rhode Island taking away the right of the judgment creditors of a corporation, whose stockholders were individually liable, to issue execution against them, and substituting a bill in equity or an action of debt to enforce the liability of the stockholder.

· In pursuance of this statute, Garrett & Sons, on April 6th, 1878, filed their bill in the United States Circuit Court for the District of Rhode Island, against the American File Company and all the stockholders thereof who were citizens of the State of Rhode Island, to enforce their individual liability to pay the judgment recovered against the American File Company.

The stockholders against whom this liability was sought to be enforced filed their joint answer to the bill, in which they set up by way of defence the same matters, in substance, as they had alleged in their bill against Garrett & Sons.

These two cases, which involved substantially the same questions and controversies, were heard at the same time and upon the same evidence. In the case of *Garrett & Sons* v. *The American File Company and others*, the Circuit Court decreed that the defendants were jointly and severally liable for the payment of the judgment recovered by Garrett & Sons against The American File Company, and that the complainants have and recover of said stockholders the sum of $165,440.65, that being the amount due on the judgment.

In the case of *William F. Sayles and others* v. *Garrett & Sons*, the Circuit Court dismissed the bill. Appeals were taken from both decrees; by the complainants in the case of *Sayles and others* v. *Garrett & Sons*, and in the case of *Garrett & Sons* v. *The American File Company*, by William F. Sayles and other stockholders against whom the decree was rendered. Both cases were argued together in this court.

*Mr. A. D. Payne* and *Mr. Abraham Payne* for appellants.

*Mr. E. T. D. Cross* and *Mr. John K. Cowen* for appellees.

Mr. Justice Woods delivered the opinion of the court.

We shall consider the questions raised by these appeals as presented by the record in the case of *William F. Sayles and others* v. *Robert Garrett & Sons.*

The first contention of the appellants is that the bonds of the American File Company issued in 1870 were taken by its stockholders in proportion substantially to the stock held by them respectively, on the agreement between themselves that the bonds should extinguish their individual liability, and the bondholders should look to the property mortgaged to secure the bonds and the other property of the company for payment, and that Garrett & Sons were bound by this agreement.

If it be conceded, what in our opinion the record fails to show, that the bonds were issued on any such understanding, it would remain for the appellants to prove notice thereof to Garrett & Sons before the title of the latter to the bonds could be affected by it.

The bill in this case having charged that when Garrett & Sons took the bonds they had actual notice of all the circumstances under which they were issued to the stockholders, and of all and singular the rights and equities subsisting between the stockholders of the company in relation thereto, and having called for the answer of defendants under oath, the defendants answered under oath, and alleged that they took the bonds in the course of business for value before maturity, and that at the time they acquired title thereto they were ignorant of the fact that Allan A. Chapman was a stockholder in the American File Company, and had no knowledge or notice of the manner or circumstances of the issue of said bonds. The testimony of each one of the defendants was taken by deposition, in which they reiterate the denial of knowledge or notice contained in their answers. The answers and depositions of the defendants on this point stand uncontradicted by any evidence, direct or circumstantial, in the record. The truth of their denial must therefore be taken as an established fact in the case.

If, therefore, Garrett & Sons, having acquired the bonds before maturity, paid value for them, they can hold them unaffected by any equities between Allan A. Chapman and the American File Company or its stockholders. The evidence in the record shows beyond controversy that Garrett & Sons took the bonds as collateral security for a valid debt for which they held no other security, and which the bonds fell far short of securing; that after applying these and other assets to the debts for which they were pledged, there remained due to them from Kirkland, Chase & Co. more than $200,000. They were therefore purchasers for value, and are entitled to all the rights of *bona fide* holders for value, among which is the right to enforce payment from the stockholders of the American File Company. *Swift* v. *Tyson,* 16 Pet. 1; *Oates* v. *National Bank,* 100 U. S. 239; *Railroad Company* v. *National Bank,* 102 U. S. 14.

But the appellants insist (and this is their second contention) that, conceding Garrett & Sons to be *bona fide* holders of the bonds for value without notice of any equities or defences as against the first holders, they have nevertheless lost their right to enforce the individual liability of the stockholders by reason of the agreement between them and the assignees of Chapman, whereby they assumed the liability of stockholders and made themselves liable through the assignees to contribute to the other stockholders the money which they might collect from them on the bonds of the company.

It is clear that Garrett & Sons did not by this contract agree to become stockholders of the corporation or to indemnify Chapman against his individual liability as a stockholder. The agreement will bear no such interpretation. The contract was made for the benefit of the assignees, by which they took an indemnity for themselves and the bankrupt estate. If, therefore, the assignees themselves are not liable as stockholders, Garrett & Sons by this contract of indemnity assumed no liability, and they hold the bonds in question unfettered by any equities or conditions.

It is well settled that under the circumstances of the case neither the assignees nor the assets in their hands are subject

to the individual liability which attaches to stocks held by the bankrupt.    The evidence does not show that the assignees acted in any way as stockholders, that they ever attended any meetings of the corporation, or that their names appeared upon its books, or that they treated the stock standing in Chapman's name as an asset of his estate.    They merely had in their possession the certificates of stock, and yielded to Garrett & Sons any claim to the bonds of the American File Company belonging to Chapman or his firm, and took an indemnity against any supposed liability which might attach to them as holders of the stock belonging to the estate of Chapman.

In *Gray* v. *Coffin,* 9 Cush. 192, the Supreme Court of Massachusetts, having under consideration a law of that State almost identical with the Rhode Island statutes, held that the individual liability of "stockholders did not attach when their assignee had attended and voted at meetings of the corporation and done other acts of unequivocal ownership." The same result would follow under the bankrupt law.    It has long been a recognized principle of the bankrupt laws that the assignees were not bound to accept property of an onerous or unprofitable character.    *South Staffordshire Railway Company* v. *Burnside,* 5 Ex. 129 ; *Furdoonjee's Case,* 3 Ch. Div. 268 ; *Ex parte Davis,* 3 Ch. Div. 463 ; *Streeter* v. *Sumner,* 31 N. H. 542 ; *Amory* v. *Lawrence,* 3 Cliff. 523 ; *Rugely & Harrison* v. *Robinson,* 19 Ala. 404.    As the assignees of Chapman never accepted the stock, and never consented to become stockholders in the American File Company, it follows that neither they nor the assets of Chapman in their hands are subject to the individual liability of stockholders for the debt of the corporation.    The contract of indemnity did not, therefore, subject Garrett & Sons to any such liability.    It follows that they took the bonds unaffected by any agreement in respect thereto between Chapman and his co-stockholders.

*The result of these views is, that the decree in both cases must be affirmed, and it is so ordered.*