SAYLES *et al. v.* BROWN *et al.*

*(Circuit Court, D. Maryland. July 9, 1889.)*

**1. CORPORATIONS—STOCKHOLDERS—CONTRIBUTION—PENAL LIABILITY OF CORPORATION.**

Certain citizens of Rhode Island, stockholders of the American File Company, a Rhode Island corporation, who were required to pay a judgment against that corporation by a decree affirmed by the supreme court, *(File Co.* v. *Garrett,* 110 U. S. 288, 4 Sup. Ct. Rep. 90,) filed this bill in equity to compel the Maryland stockholders to ·contribute. *Held,* that the proof discloses that the liability under which the complainants as stockholders were compellable to pay the debt due by the corporation was not a contractual, but a penal, liability, under the Rhode Island law, and not enforceable outside of that state, and therefore was not a burden resting upon the Maryland stockholders, in respect to which they can be called upon for contribution.

**2. SAME—UNAUTHORIZED INCREASE OF CAPITAL—LIABILITY OF STOCKHOLDER.**

*Held,* that it appears from the evidence that the increase of capital stock of the American File Company, issued after the filing of the certificate required by section 1, c. 128, Rev. St. R. I., was not an increase authorized by a valid, corporate vote of a majority of the stockholders, and that under the circumstances of this case it did not, in respect to the Garrett debt, entail upon the holders of that stock the liabilities imposed by the first section of the Rhode Island law for failure to file the certificate required by that section.

*(Syllabus by the Court.)*

In Equity..

*Venable & Packard,* for complainants.

*Robertson & Marbury, Goodwin & Culbreth, Barton & Willmer, Brown & Brune,* and *G. T. Wallis,* for defendants.

Before BOND and MORRIS, JJ.

MORRIS, J.   The complainants are citizens of Rhode Island, who were stockholders of the American File Company, a corporation of that state, and some of whom were officers and directors of said corporation, and are the persons who were compelled to pay a debt of said company to Robert Garrett & Sons, decreed to be paid by the decree of the circuit court of the United States for the district of Rhode Island, which was affirmed in the supreme court of the United States in the case of *File Co.* v. *Garrett,* 110 U. S. 288, 4 Sup. Ct. Rep. 90.   Having made said payment on the 18th April, 1884, these complainants filed this bill on the 12th February, 1886, asking a decree requiring the Maryland stockholders of said company to make contribution in proportion to the number of shares of stock held by each.   The complainants claim that they are entitled to maintain the present suit for contribution, because the debt thus paid by them under compulsion of law was, as they aver, paid for the benefit and protection of the defendants in this case, as well as all other stockholders, and in satisfaction of a demand for which these defendants were liable as well as the complainants.   The American File Company was a manufacturing corporation, chartered by a special act of the Rhode Island legislature, passed in 1863, by which it was declared that its capital stock should not exceed the sum of $500,000, to be fixed in amount by a vote of the company.   It was provided by the charter that there should be an annual meeting of the corporation held in the village of Pawtucket, and that at all meetings of the corporation not less than a

majority of the shares should constitute a quorum for doing business, and that all matters should be decided by a majority of the votes present, allowing each stockholder in person or by proxy one vote for each share by him owned. It was also provided that the liabilities of the members of the company for debts of the corporation, its members and officers, should be fixed and limited by, and the corporation, its members and officers, should in all respects be subject to, the provisions of chapters 125 and 128 of the Revised Statutes of Rhode Island. By the first section of chapter 128 of the Rhode Island Revised Statutes the members of every incorporated manufacturing company were made jointly and severally liable for all the debts and contracts of the company until the whole amount of the capital stock fixed and limited by the charter of said company, or by vote of the company in pursuance of the charter or of law, should be paid in, and a certificate thereof made and recorded in a book kept for that purpose in the office of the town-clerk of the town wherein the manufactory was established, and no longer, except as afterwards provided. By the eleventh section it was provided that every such company should file in the town-clerk's office of the town where the manufactory was established, annually, a certificate, signed by the president and a majority of the directors, truly stating the amount of all assessments voted by the company and actually paid in, and the amount of all existing debts; and by the twelfth section it was provided that if the company should fail to file such annual certificate all the stockholders should be jointly and severally liable for all the debts of the company.

It is evident that the individual liability of stockholders under the first and second sections of the Revised Statutes is contractual, and the liability under the twelfth section is penal. *Flash* v. *Conn,* 109 U. S. 371, 3 Sup. Ct. Rep. 263. But in the case of *Garrett* v. *Sayles,* neither in the circuit court (1 Fed. Rep. 375) nor on appeal in the supreme court (110 U. S. 288, 4 Sup. Ct. Rep. 90) was it necessary or material to consider under which of these sections the liability arose. That case was begun in a Rhode Island court, and it made no difference, in a case instituted within that state, whether the liability was contractual or penal. The Garretts, in their suit against these complainants, after alleging that the file company was "a manufacturing company, located and transacting business, and whose manufactory is and always has been established, in the town of Lincoln," further aver "that said company or its officers never did file any certificate in the town-clerk's office of said Lincoln, where the manufactory of said company was established, as required by the said act of incorporation and by said statutes, so as to exempt the stockholders of said company from personal liability as aforesaid for the debts of said company;" and in that case these complainants, by their pleadings, admitted the liability, unless the equitable defenses there set up by them could be maintained. 1 Fed. Rep. 375. If, however, the fact was that the actual liability under which complainants rested was penal, and could only be enforced in Rhode Island, then, plainly, they cannot maintain this suit against the Maryland stockholders, who were

not under that liability, and cannot compel them to contribute on the ground of having been relieved of a common burden. To meet this state of the law, the complainants have framed their bill in this case, to allege and show that they have discharged a liability which arose from an entire failure to comply with the first section of the statute. The following are some of its averments:

"And thereupon your orators complain and say that (1) the American File Company, a body corporate, was duly chartered by a special act of the general assembly of the state of Rhode Island, enacted at the May session thereof, A. D. 1863, for the purpose of manufacturing files, and for other manufacturing purposes connected therewith. (2) Under this charter the said company was duly organized, and commenced the business of manufacturing files in the town of Lincoln, in the county of Providence, in the state of Rhode Island, some time in the year 1863, and continued the said business for a number of years. And the said company never carried on business at any other place. (3) By the special provisions of the act of incorporation, as by the same, when produced, will appear, the capital stock of said company was not to exceed five hundred thousand dollars, the amount to be fixed by a vote of the company, and to be divided into shares of one thousand dollars each. By a vote of the company the capital stock was in 1863 fixed at one hundred and fifty thousand dollars. This was all subscribed for and taken in shares of one thousand dollars par value. On or about the 16th day of July, A. D. 1863, the amount of the capital stock was by vote of the company made two hundred thousand dollars, and the additional fifty thousand dollars was subscribed for and taken in shares of the same par value. (4) Subsequently, and on or about the 12th of May, A. D. 1864, by an amendment to the charter of said corporation, the par value of each share of the capital stock in said corporation was reduced from one thousand dollars to one hundred dollars per share, and new certificates of stock were issued to those persons who held certificates of stock of the par value of one thousand dollars per share for an amount of stock, in shares of the par value of one hundred dollars each, equal to the amount which each had held in shares of the par value of one thousand dollars each; the certificates of stock in shares of the par value of one thousand dollars each being surrendered when the certificates of stock in shares of the par value of one hundred dollars each were delivered. (5) Afterwards, to-wit, on or about the 16th day of April, A. D. 1868, by vote of said corporation, another additional issue of capital stock in said corporation was made to the amount of one hundred thousand dollars, making the entire amount of the capital stock three hundred thousand dollars, and said additional issue of capital stock was subscribed for and taken in shares of the par value of one hundred dollars each." "(33) By the special provisions of the act of incorporation of said company, as by the same, when produced, will appear, and also by the statutes of the said state of Rhode Island in such cases made and provided, in force at the times of the transactions hereinbefore referred to, the members or shareholders of said company were jointly and severally liable for all debts and contracts made and entered into by said company until the whole amount of the capital stock, fixed and limited by the charter of said company, or by vote of the company in pursuance of the charter or of law, had been paid in, and a certificate thereof had been made and recorded in a book kept for that purpose, in the office of the town-clerk of the town wherein the manufactory of said company was established, to-wit, the said town of Lincoln in the state of Rhode Island. (34) Neither the said American File Company, nor any of its officers or stockholders, ever did file in the town-clerk's office of the said town of Lincoln, where the manufactory of said company was established, the said certificate required by the said act of incorporation and by

said statute, and the said stockholders of said company were and continued to be jointly and severally liable for all the debts of said company.    (35) It was with the knowledge, consent, and acquiescence of the stockholders in said American File Company that said certificate was not filed as aforesaid, because, as your orators aver, it was known, acquiesced in, and consented to by all the stockholders in said company that its business could only be conducted by means of the credit given to it by the fact that the individual stockholders therein were personally liable for its debts." "(44) All the stock issued by the said American File Co., as aforesaid, has been paid in full, and nothing is due or owing to said company from the stockholders thereof on any of said stock; and the said American File Company is totally insolvent, and is not possessed of or entitled to any property whatsoever, and has long ceased to do any business whatsoever; and it would be costly and of no benefit whatsoever for your orators to institute or prosecute proceedings to recover from said corporation any of the moneys due and owing on said bonds and coupons and interest, by reason of the insolvency of said corporation; and the said company has no officer or representative residing in the state of Maryland, or within the reach of the process of this court."

Some time after the overruling of defendants' demurrers to this bill, in July, 1886, and after the filing of the answers of some of the defendants, in October, 1886, it was discovered and became known to both complainants and defendants that some of the averments in complainants' bill were not in fact true; that in fact the company had first, in the year 1863, established its manufactory in the village of Pawtucket, in the town of North Providence, and had continued established there until some time in the year 1869, when, having built new works in the town of Lincoln, it established its manufactory there; and it also became known that a certificate in conformity with the first section of the Rhode Island law, signed and sworn to by the president, treasurer, and clerk, and a majority of the directors, had been filed on January 19, 1864, in the clerk's office of the town of North Providence, where the manufactory was then established, certifying that the capital stock had been fixed at $200,000, and had been actually paid in.    These facts were set up in the answer of George S. Brown, filed 29th December, 1886, and adopted by other defendants.    A general replication was filed by the complainants on 17th February, 1887, they having failed to amend, and electing to stand on their bill as filed.

The testimony has established that the $200,000 of stock was actually paid in, and that the certificate filed January 19, 1864, was in compliance with the law.    The allegation in the bill that the company never carried on business at any place other than Lincoln is not sustained, and the proof shows that it could not possibly be true that the Baltimore stockholders ever consented, as alleged in the bill, to the withholding of any certificates for the purpose of giving credit to the company by becoming individually liable for its debts.    The proof does disclose that, during the period the stockholders were not contractually liable to creditors because the certificate required by section 1 had been duly filed, they were always penally liable under sections 11 and 12 because of the failure to file the annual certificates.    If there were nothing more in the case than is disclosed by the allegations of the bill, which are denied

by the answers and disproved by the testimony, we think it would be evident that the bill should be dismissed, but it is contended on behalf of the complainants that the proof does still show facts upon which they are entitled to relief, and upon which the essential averments of the bill can be maintained. In the minute-book of the meetings of the stockholders of the company the following appears:

"PAWTUCKET, April 16th, 1868.

"The stockholders met according to agreement. Present: J. Y. Smith, John R. Brockett, W. F. Sayles, H. A. Thompson, A. Chambers, J. O. Starkweather; and the following gentlemen were duly represented by H. A. Thompson, viz.: H. Woods, Jr., Geo. S. Brown, Joseph Reynolds.

"Resolved, that the capital stock of the company be further increased to an amount not exceeding one hundred thousand dollars, and the directors are hereby authorized to issue new shares for that amount to the present stockholders at the rate of $50 per share, provided the stockholders shall consent to such issue. Resolved, that the directors be fully empowered to carry into effect the resolutions passed at the meeting of stockholders held March 20th last, at such time, and in such manner, as may seem most expedient for the interests of the company." (This had reference to selling the real estate and buildings in Pawtucket, and procuring a less expensive property elsewhere.) "Resolved, that, whereas the affairs of this company have reached a point when it is absolutely necessary that the sum of $50,000 shall be raised by sale of our stock, as already proposed, the Baltimore directors are requested to call the Baltimore stockholders together, to ascertain what proportion of the proposed increase of capital stock will be taken by them, and the Rhode Island directors are requested to pursue the same course in regard to the Rhode Island stockholders. Adjourned to meet on Thursday, April 30th, at 10 A. M.                    Attest: W. F. SAYLES, Secty. *pro tem.*"

In accordance with this vote, stock to an amount $17,500 less than $100,000 of face value was issued, to be disposed of to stockholders at $50 per share of $100 par value. Mr. Chapman, a Baltimore stockholder, subsequently pledged himself that he would get the Baltimore stockholders to take their *pro rata* proportion, and certificates were made out and dated October 14, 1868, and sent to him, as follows: George S. Brown, 60 shares; Henry A. Thompson, 30; Hiram Woods, Jr., 30; Joseph Reynolds, 35; Thomas J. Wilson, 20; Horace Love, 15; R. Norris, Jr., 10; A. A. Chapman, 245 shares. Many of these persons refused to accept the certificates, and declined to be subscribers for the stock. Mr. Chapman, in his testimony, says:

"Some of them took it, and some did not. Mr. Brown did not take his; I bought his entire interest out in the factory. Mr. Thompson and Mr. Woods took their stock. Mr. Reynolds took his. I am not positive whether Mr. Wilson took his or not. I know that Mr. Love did not take his, and Richard Norris did not take his."

The fact that the names appear on the stock register is entitled to but little weight, as the certificates were issued without previous authority, except from Mr. Chapman, who settled for it all with promissory notes of the company, which he had taken up and held. Arising out of the transactions connected with this vote to increase the capital stock from $200,000 to $300,000 many difficult questions have been presented and

argued at bar. In the first place, it is contended on behalf of the defendants that there never was any valid corporate act authorizing this increase of capital stock, because the meeting had not been properly called, and because a majority of the stockholders were not present or represented at the meeting which voted its issue. It is a fact which appears from the minutes that there was not a validly authorized representation of a majority of the stock. At this meeting of 16th April, 1868, assuming that Henry A. Thompson represented Allen A. Chapman's stock, which does not appear from the minutes, but probably was so because the proxy filed in the minute-book authorized Thompson to vote Chapman's stock as well as that of the other persons whom the minutes state he did represent, still there was not a majority of the 200 shares present, unless W. F. Sayles was authorized to represent and vote the $36,000 of Taft stock. The testimony is very convincing that Sayles' only authority with respect to the Taft stock was either a verbal one or an assumed one. This stock was pledged to Sayles, and in his testimony he referred to the written agreement of pledge as containing his authority to vote it, but, when produced, the agreement, which is dated 12th March, 1868, is found to contain no such authority. The Rhode Island statute (section 24) specially enacts that the pledgeor and not the pledgee of stock shall have the right to vote it.

The filing of the certificate in the township of North Providence on July 19, 1864, ended the contractual individual liability of the stockholders under the first section of the law as to the debts thereafter contracted; and one question in this case is whether as to those who never took the new stock their individual liability was revived by the issuing of the new stock, supposing its issue to have been valid, and as to which no certificate was or could be filed. In construing a statute so harsh and so destructive of the very purposes of incorporation, it does not seem to us we should, if avoidable, give it a construction which would put it in the power of those holding a majority of the stock, many of them, perhaps, as was the fact in this case, themselves personally responsible by indorsement and otherwise for the bulk of the company's large indebtedness, by voting an increase of capital by the issue of partially paid up stock to impose a ruinous burden upon stockholders whose individual liability had once ended. The reasoning of the opinion of the court of appeals of New York in *Veeder* v. *Mudgett*, 95 N. Y. 295, is to us very convincing, and the judgment of that court upon a similar statute, but under which the stockholders could only be held to an amount equal to the par value of each one's stock, was that holders of the original stock were not liable, and that the liability rested solely upon the holders of the new stock, and only to the extent of their holdings of that new stock. But the question still remains whether any of the stockholders are to be held liable on account of the alleged increase of stock of this company? The charter of the American File Company provided that the capital should not exceed $500,000, " to be fixed in amount by a vote of the company." The first section of the law speaks of "the whole amount of the capital stock fixed and limited by the charter of the company, or by a vote of

the company in pursuance of the charter or of law." The only reference to an increase is in the last clause of section 2 which says: "In case of increase of capital stock of said companies, like proceedings shall be had as to the amount added and paid in." It seems to us, reading the terms of the statute with the strictness which all courts have held such legislation demands, that the changing of the capital stock once fixed by a vote of the company must, in order to subject any of the stockholders to a liability so greatly in derogation of common right, be a change made by a valid corporate act. How far a stockholder would be estopped from setting up such invalidity as against a creditor who had been misled to his injury in dealing with the corporation on the faith of such invalid increase is a question which cannot arise in this case. The Garretts took the bonds of the company, issued in 1870, from Chapman, knowing nothing of the company, and making no inquiry, and the complainants themselves, or those they represent, were the active managers, officers, and directors of the company, and they were all liable in Rhode Island to the Garretts for this debt, without reference to the supposed increase of stock. They are not in the position of innocent creditors of the company, who might by any possibility have been misled to their injury with regard to the stock, assets, or solvency of the company. The company never paid any dividends, and this third issue of stock, so far as it was taken at all, was divided among certain of the old stockholders simply to relieve the company by converting a floating debt into stock. The company's indebtedness was not afterwards increased, and the bonds upon which the Garretts recovered judgment were issued to take up liabilities of the company then existing. So far as this case discloses, we see no ground upon which to found a suggestion that any innocent person who has dealt with the company could be injuriously affected by the proposed increase of capital stock being held invalid for want of a valid corporate vote authorizing its issue.

We think the complainants' bill must be dismissed as to the defendants generally upon the following grounds:

1. Because the allegations of the bill are not sustained by the proofs.

2. Because the contractual liability of the defendants, who are holders only of shares of the old $200,000 of stock, was extinguished as to after-contracted debts by the filing of the certificate on the 19th July, 1864, with the town-clerk of North Providence, where the manufactory was then established, and was not revived by the subsequent increase of stock, even if valid.

3. Because, as the issue of stock in 1868 was not authorized by a valid corporate vote, it did not impose any liability under the first section of the Rhode Island law, even upon those of the defendants who accepted the new stock.

4. That therefore the liability under which the complainants were compellable to pay the bonds issued in 1870, held by the Garretts, was the penal liability for not filing the annual certificates under section 12, which could only be enforced in Rhode Island, and in respect to which these defendants cannot be called upon to contribute.

There are special defenses pleaded on behalf of certain of the defendants, which in our opinion are good, but the view we have taken of complainants' case makes it unnecessary to discuss them. The bill must be dismissed.

BOND, J., concurs.