## Givens et al. v. Louisville Property Co.'s Assignee.

(Decided March 19, 1935.)

ISHAM G. LEABOW for appellants.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

On June 19, 1917, William Givens and Rilla Givens leased for a period of twenty-five years, to Brown Sparks Coal Company, certain land in Bell county, Ky., with the exclusive right to mine and remove coal from all seams or beds of coal thereon and thereunder. The lease conferred the right upon the lessee to build mining camps, tram roads, tipples, and such other buildings as are necessary to carrying out the mining of the

leased premises. It provided for the payment of rents and royalties, with a lien on the leasehold fixtures and improvements, after the rents and royalties became due for a period of twelve months. It stipulated at the expiration of the lease for a surrender to the lessor of the premises "with the improvements, fixtures and buildings thereon and with all the mines, entries, openings, tram ways, inclines, shutes, tracks, rails and appurtenances," "on the termination of the work," but "the personal property of the lessee" might be removed by it provided all rents and royalties had been paid. It contained a provision that if the lessee failed to pay the rents and royalties or either, "as provided for at the time or place" therein specified, "and shall continue in such default sixty days thereafter, then the lease, at the option of the lessor, shall be forfeited and become null and void and all rights and privileges of the lessee thereunder and the lessor or assigns of the lessor, may thereupon enter upon and take possession of said property with the *appurtenances thereon* in the same manner and to the extent the lessor might or could do at the expiration of the full term of the lease." Section 18 further provides "that should the lessee fail to keep, observe and comply with all or any of the covenants contained in the lease, according to the tenor and intent thereof and so continue in default for sixty days after written notice specifying the particular breach * * * the lease at the option of the lessor shall be forfeited and become null and void," and the lessor "may enter upon and take possession of the premises and appurtenances in the same manner and to the extent that the lessor might or could do at the expiration of the full term of the lease," "without further notice or demand upon the lessee or of the intention of the lessor to terminate the lease." Section 19 reads:

> "The lessor further covenants and agrees that going into bankruptcy or making an assignment or going into the hands of a receiver, unless the receivership be dissolved within sixty days thereafter, shall entitle the lessor to declare this lease void and terminate it and to enter at once and have immediate possession of the leased premises."

On July 14, 1917, Perley T. Cairns and others, by their agent and attorney in fact, the Fidelity & Columbia Trust Company, leased to R. L. Brown "the sur-

face of a tract of land on Hignite Creek of Yellow Creek in Bell county, for the purpose of enabling him and his assigns to build and maintain thereon a tipple, tram road, railroad switch and side tracks," for the purpose of transporting over same coal to be mined and removed from the John Cole patent of fifty acres, which had been leased by William Givens for coal mining purposes to Brown. The Cairns lease carried with it the right of the lessee to erect miners' houses and other structures necessary for use in the mining and removing the coal from the Cole land. The lease was to "continue during the time of the continuance of the mining operations of Brown or his assigns on the Cole land and while engaged in mining and removing coal therefrom."

The Congress Coal Mining Company, by mesne conveyances, acquired title to these leases with all rights thereunder. It operated the mine on the Givens land and used in connection therewith the miners' houses, incline, tipple, shutes, tramways, tracks, and rails, which had been constructed in virtue of the provisions of the Cairns lease by it and its predecessors in title, prior to November, 1922, when it suspended work. At that time it was indebted to the Givenses for rentals aggregating $6,413.45. To recover of it this sum, they instituted an action in the Bell circuit court.

In the petition in that action it was charged "that the rights and privileges of the defendants under the lease from Perley T. Cairns and others, * * * together with all appurtenances made thereon by said lessees or by defendants, reverted to plaintiffs (the Givens) as being appurtenant and part of the mine, mining plant and improvements agreed to be surrendered to plaintiffs under said lease of plaintiffs to the defendants." After the action was instituted the Congress Coal Mining Company was adjudged a bankrupt, and under a provision of the Givens lease, declaring a forfeiture in the event of it being adjudged a bankrupt, they asserted their lease to the Brown Sparks Coal Company was canceled and terminated, with the right in them to enter on and take possession of the land, including the lease from Perley T. Cairns and others to R. L. Brown, "as well as all inclines, tipples, side tracks and all other structures thereon erected for

the purpose of mining and removing coal from the John Cole fifty acre patent mentioned and described in the said lease.''

On the entry of the judgment, January 29, 1926, the Givenses entered upon the land covered by the Cairns lease and took actual possession of the miners' houses, tipples, inclines, tramways, rails, and tracks thereon, and continued in possession of the same to the bringing of this action.

The title of the United States Trust Company, as assignee of the Louisville Property Company, to the Cairns land, is admitted by the Givenses.

The Cairns lease expressly provides it ''shall continue during the time of the continuance of the mining operations of said Brown or his assigns on said Cole patent and while engaged in mining and removing coal therefrom.'' On its going into bankruptcy, the Congress Coal Mining Company ceased to operate ''on said Cole patent,'' ''and to remove coal therefrom.'' It reported in the bankruptcy proceedings as an asset the Cairns lease at a valuation of $10,000. It does not appear that it was taken charge of by the bankruptcy court or its trustees. The rule is that a trustee in bankruptcy is not bound to accept property of an onerous or unprofitable character and that he has reasonable time in which to elect whether he will accept or not. If he declines to take the property, the bankrupt thereafter can assert title thereto. American File Co. v. Garrett, 110 U. S. 288, 295, 4 S. Ct. 90, 28 L. Ed. 149; Sparhawk v. Yerkes, 142 U. S. 1, 12 S. Ct. 104, 35 L. Ed. 915; Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799, 36 L. Ed. 609; First National Bank v. Lasater, 196 U. S. 115, 25 S. Ct. 206, 49 L. Ed. 408.

In accordance with this rule, the Congress Coal Mining Company, after the trustee in bankruptcy declined to accept the Cairns lease as an asset of the bankrupt, was entitled to assert title thereto, which it did not do.

The Givenses do not assert title to the Cairns lease, the miners' houses, tramways, tracks and rails, tipple, incline and shutes thereon, as assgnee of the Congress Coal Mining Company, or otherwise by or through it, or in any manner except by virtue of the provisions of

their lease to the 50-acre Cole patent. They confine their right in this respect to sections 16, 17, 18, and 19 of their lease.

We are not convinced that either of these sections confers upon the Givenses any claim, possession, right, or title to the Cairns lease or anything thereon, in the event of a termination or a forfeiture of their lease.

The word "appurtenances," as it is used in their lease, embraces only things appertaining to it. It is their contention that this word, as it is used therein, entitles them to the miners' houses, tramway, rails, tracks, tipples, shutes, and other structures on the Cairns premises, erected by the owners of the Cairns lease in virtue of its terms. In reentering and taking possession of their premises after the termination or forfeiture of their lease, they did so as owners of their premises and not as assignees of their own lease nor of the Cairns lease. They assert ownership to the Cairns lease as a right accruing to them as owners of their own premises, after the termination or forfeiture of the lease thereon. So to construe their lease is equivalent to declaring them the owners as assignees of the Cairns lease and the appurtenances thereto belonging. Such a construction finds no support in the language of either lease.

The judgment of the circuit court is in harmony with our views. It is affirmed.