### SCHRAM v. TOBIAS.
#### No. 1329.

District Court, E. D. Michigan, S. D.
Sept. 6, 1941.

Robert S. Marx, Carl Runge, Orville J. Thill, and Frank M. Wiseman, all of Detroit, Mich., for plaintiff.

Howard & Howard, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. Plaintiff, B. C. Schram, is the duly appointed, qualified and acting receiver of First National Bank-Detroit, an insolvent national banking association, here engaged in winding up the affairs of said bank by seeking to enforce a statutory assessment liability against defendant, Jerry J. Tobias, as a stockholder of said insolvent bank. Defendant is a resident of this district.

2. Said bank closed its doors on February 11, 1933, and never thereafter resumed the conduct of normal banking business. Thereafter, the Comptroller of the Currency of the United States duly found and declared said bank to be insolvent, and appointed a receiver therefor.

3. On May 16, 1933, the Comptroller of the Currency duly levied a 100% assessment against the stockholders of said bank, same being made payable on July 31, 1933.

4. In the class or representative suit of Barbour v. Thomas, D.C., 7 F.Supp. 271, affirmed, 6 Cir., 86 F.2d 510, certiorari denied, 300 U.S. 670, 57 S.Ct. 513, 81 L.Ed. 877, this court determined that the stockholders of Detroit Bankers Company, a Michigan holding corporation, were liable for the aforesaid assessment levied against stockholders of said bank, to the extent of $14.055775 per share of Detroit Bankers Company stock.

5. On March 9, 1931, defendant acquired 35 shares of stock of said Detroit Bankers Company, represented by Certificates Nos. 037328/30, for 10 shares each, and No. 137331, for 5 shares.

6. On December 8, 1931, said defendant pledged these shares, with other stock and property, as collateral to his note, subsequently renewed by a $3,575 note dated March 9, 1932, payable one month after date to the order of First Wayne National Bank, predecessor of First National Bank-Detroit. Said note, among other things, contained a power of private or public sale of the collateral upon forfeiture of the pledge, and authorized the holder to become purchaser at such sale.

7. At the time of execution and delivery of said note and pledge agreement, defendant executed and delivered to the pledgee-bank a blank assignment of each of said stock certificates, and delivered the certificates, so assigned, to said pledgee-bank.

8. On August 8, 1932, defendant was adjudicated a bankrupt in proceeding number 14246 in this court.

As a secured creditor defendant scheduled:

"First Wayne National Bank of Detroit — Promissory note — $3525.00 Collateral

 35 shares Detroit Bankers Co., at $20.00 — $700.00" (and other stock)

Under "Choses in Action" owned by defendant, sub-head "Stock in Incorporated Companies", he scheduled: "35 Shares Detroit Bankers Co.—$700.00" (and other stock)

On September 25, 1932, the trustee in bankruptcy filed its first and final report, stating generally that this was a "No Asset Case", and specifically: "The stock scheduled by the Bankrupt has no value for this estate according to information given your Trustee. * * * No assets of value to this estate were uncovered by your Trustee."

On October 17, 1932, the Referees in bankruptcy entered an order closing the estate and discharging the Trustee, based upon findings therein made that "the Trustee has neither received nor disbursed any moneys; that there is no property nor effects in said Bankrupt's estate; and that there has, therefore, been no distribution by said Trustee."

On October 24, 1932, defendant was granted a final discharge from his debts.

9. In connection with said bankruptcy proceeding there was no action or exercise of any right of title relative to said shares of stock by the trustee, no valuation of the stock, no transfer to the pledgee-bank, and no payment to creditors, by valuation of securities or otherwise.

10. It is apparent from the record of the bankruptcy proceeding that the Trustee elected to abandon the stock in question.

11. On November 3, 1932, the pledgee-bank had the certificates transferred to the Detroit Company, as nominee for the bank "as collateral security for money loaned thereon", for purposes of collecting dividends, and received Certificate No. 071059,

for 35 shares, in the name of the Detroit Company, on the reverse side of which certificate the Detroit Company executed a blank assignment. Thereafter, these 35 shares of stock were carried and handled by the pledgee-bank in the same manner as prior thereto, that is, as collateral to said promissory note. Neither Detroit Bankers Company, the Detroit Company, nor the pledgee-bank claimed the stock to be, or treated it as, property whose title was in either The Detroit Company or the pledgee-bank.

On January 3, 1933, the pledgee-bank credited on said note the sum of $8.75, being dividend then paid by Detroit Bankers Company on said 35 shares of stock.

12. On July 17, 1939, complaint was filed herein and process delivered to the United States Marshal for service on defendant, and defendant was served on August 23, 1939, by the Marshal.

13. No part of the assessment on said 35 shares of stock has been paid and the amount due thereon is $691.38, which includes interest at 5% per annum from July 31, 1933.

14. Four contentions, unsupported by citation of any authorities, are advanced by defendant in defense of this case, namely:

(a) That defendant's discharge in bankruptcy constituted a discharge from assessment obligation on said shares;

(b) That title to the shares in question automatically passed to the trustee in bankruptcy and were never abandoned by him;

(c) That the transfer of the certificates in question into the name of the nominee for the pledgee-bank constituted either a sale to the bank's nominee under the power of sale in the pledge agreement in said promissory note, or an unauthorized conversion by the pledgee-bank, which divested the former owner of title;

(d) That this suit was not commenced within six years from the time of the accrual of the alleged cause of action, and that action is thereby barred under the Michigan Statute of Limitations.

### Conclusions of Law.

1. District Courts of the United States have jurisdiction of cases for winding up of the affairs of a national banking association, which includes the instant case. 28 U.S.C.A. § 41(16); Dinan v. First Nat. Bank, 6 Cir., 117 F.2d 459.

2. The assessment obligation here involved was not a claim provable in bankruptcy during the pendency of defendant's bankruptcy proceedings, it being then purely a contingent obligation. Pufahl v. Parks' Estate, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133; Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827; In re Jorolemon-Oliver Co., 2 Cir., 213 F. 625.

3. Plaintiff's cause of action herein did not accrue until the date specified for payment of the assessment, namely, July 31, 1933. Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605.

4. This suit was commenced within six years thereafter, and is consequently not barred by the applicable Michigan Statute of Limitations. Rule 3, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; 1929 Michigan Compiled Laws, § 13976.

5. A trustee in bankruptcy is not bound to accept title to property of a bankrupt, but has the right to elect to abandon same, and such abandonment need not be by express order where, as here, the facts clearly indicate that the trustee never accepted or exercised any right of title to the stock in question and stated that it "had no value for the bankruptcy estate". Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827; Mills Novelty Co. v. Monarch Tool Co., 6 Cir., 49 F.2d 28; Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609; American File Co. v. Garrett, 110 U.S. 288, 4 S.Ct. 90, 28 L.Ed. 149; Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915.

6. Upon abandonment of an asset by a trustee in bankruptcy whatever inchoate title or interest passed to him is extinguished by relation back to the filing of the bankruptcy petition, leaving title as it stood just prior to the filing of the bankruptcy petition. Brown v. O'Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827; American File Co. v. Garrett, 110 U.S. 288, 4 S.Ct. 90, 28 L.Ed. 149; Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609.

7. A transfer of pledged stock to the name of the pledgee's nominee, as here, constitutes neither a sale nor a conversion of the stock, and consequently does not divest the title existing at the time of such transfer. Hurley v. Pusey & Jones Co., D. C., 274 F. 487; Detroit Trust Co. v. First Nat. Bank-Detroit, D.C., 7 F.Supp. 117;

Ritchie v. Burke, C.C., 109 F. 16; Osborn v. Detroit Kraut Co., 193 Mich. 664, 160 N.W. 442.

8. Title to the stock in question was in defendant at the time the First National Bank-Detroit closed and at the time of the levying of said assessment, for which assessment he is liable, and judgment shall *be entered in favor of plaintiff and against* defendant for the amount stated, with costs to be taxed, for which execution may issue.