## TAYLOR *v.* IRWIN.

*(Circuit Court, N. D. Iowa, O. D.* June Term, 1884.)

1. BANKRUPTCY—LIMITATIONS—BANKRUPT'S LAND.
   According to the bankrupt act, assignee should bring suit for property withheld from him within two years from the time when the cause of action accrued. If he does not his right of action is barred, except in cases where the relief sought is against fraud.

2. SAME—BANKRUPT'S LAND—ASSIGNEE'S DISCRETION AS TO IT.
   It is for the assignee to determine whether or not, in a given case, he will assert title to property; he may elect not to charge the estate with the burden of looking after property.

3. SAME—FAILURE TO RECORD ASSIGNMENT.
   The failure of assignee to record the assignment in a county in which land of the bankrupt is situate is evidence of a disposition not to assert title to the land.

4. SAME—INFORMAL CONVEYANCE—DELAY OF ASSIGNEE.
   A man's handing to his wife his patent for a certain piece of land, with the intention that she shall take title thereby, is not a conveyance in law, and the land can, after the bankruptcy of husband, be taken by his assignee. But if assignee does not assert title to it within the time limited by the bankruptcy act the wife can hold.

5. DELAY OF ASSIGNEE TO ASSUME LAND—ESTOPPED.
   The failure by assignee to assume charge of land of bankrupt for such length of time as would imply a disposition not to assume at all, estops him from asserting right thereto after bankrupt in possession has sold to an innocent purchaser for value.

At Law. Action in ejectment.

*Taylor & Pollard* and *M. D. O'Connell,* for plaintiff.

*C. A. Irwin* and *Robinson & Milchrist,* for defendant.

SHIRAS, J. In this action plaintiff sues in ejectment for the purpose of determining the right to the possession of the N. E. ¼ of sec-

tion 26, township 88, range 33, situated in Calhoun county, Iowa. The parties waived a jury trial, submitting the cause to the court upon an agreed statement of facts and other testimony.

The land in question was entered by one Joseph Cain, to whom the patent from the United States issued in 1860. On the twenty-third of December, 1876, the firm of B. & J. F. Slevin & Co., of which firm Joseph Cain was a member, filed their petition in bankruptcy in the United States district court for the Eastern division of Missouri, and the firm and its members were duly adjudged to be bankrupts, and on the seventeenth of January, 1877, Preston Player was appointed assignee of the bankrupts' estate, and on the eighteenth of January, 1877, the register executed to such assignee a deed of the property of said bankrupts. This deed has never been recorded in Calhoun county, Iowa. The land in controversy was not included in the schedules filed by Cain in the bankruptcy proceedings, and the assignee did not have actual knowledge of the fact that the title to this land stood in the name of Joseph Cain until January, 1883, when his attention was called to the fact by a creditor of the firm. Joseph Cain claims that he had given this realty to his wife in March, 1876. No transfer of the title was made, nor was there any written evidence of such gift executed. On the eighth of April, 1881, Joseph Cain and wife sold the premises in question to Harvey E. Buck, executing a warranty deed therefor, which deed was duly recorded in Calhoun county, Iowa, on the sixteenth day of May, 1881, and on the eighth of October, 1881, said Buck and wife sold and conveyed, by warranty deed, the said premises to W. W. Irwin, the defendant, for the sum of $1,650. At the time of the purchase by defendant he had no actual notice or knowledge of the fact that Joseph Cain had been adjudged a bankrupt, and he entered upon the property under that purchase, and is now in possession thereof. On the tenth day of January, 1883, the fourth meeting of the creditors of B. & J. F. Slevin & Co. was held, and a list of the other uncollected and outstanding assets of the firm was exhibited and sold at auction. The realty in question was not included in this list as thus exhibited, but the attention of the assignee having been called to the matter by a creditor, he put up the realty for sale and sold it at public auction to plaintiff, who bid therefor the sum of $10. This sale, therefore, was made without any order having been obtained from the court for making same, without any notice whatever being given, or any effort made to realize for the estate the value of the property. The report of the assignee of his acts in the premises, including the sale of the realty to plaintiff, was approved by the court in bankruptcy, and a quitclaim deed was executed by the assignee and delivered to plaintiff, who caused the same to be recorded in Calhoun county, Iowa, on the fifteenth day of March, 1883, and on the twenty-eighth of the same month plaintiff filed his petition in ejectment against defendant for the recovery of possession of the land. Thus it appears that both

parties claim title under Joseph Cain,—the plaintiff under the deed of the assignee in bankruptcy, and the defendant under the deed from Cain and wife to Buck, and the deed from Buck and wife to defendant.

On part of the plaintiff it is claimed that the title of the assignee reverts back to the date of the filing of the petition in bankruptcy, and includes all property which in fact belongs to the bankrupt, whether scheduled or not, and that from that time no act done or conveyance made by the bankrupt can in any way affect the title of the assignee, and that the pendency of the proceeding in bankruptcy is notice to all the world, and, further, that the assignee is not required, in order to protect his rights, to record the deed of assignment in the several counties wherein the bankrupt may have owned property; the provision found in section 5054 of the bankrupt act, requiring the assignee, within six months, to cause the assignment to be recorded in every registry of deeds or other office within the United States where a conveyance of any lands owned by the bankrupt ought by law to be recorded, being intended only as a means of furnishing proof of title to persons purchasing property of the assignee.

In support of these propositions plaintiff cites Bump, Bankr. 139; *Phillips* v. *Helmbold*, 26 N. J. Eq. 208; *In re Lake*, 6 N. B. R. 542; *In re Gregg*, 3 N. B. R. 529; *Ex parte Vogel*, 2 N. B. R. 427; *In re Wynne*, 4 N. B. R. 23; *Davis* v. *Anderson*, 6 N. B. R. 154; *Ex parte Foster*, 2 Story, 158; *Johnson* v. *Geisriter*, 26 Ark. 46; *Barron* v. *Newbury*, 1 Biss. 149; *Mays* v. *Manuf'rs' Nat. Bank*, 64 Pa. St. 74; *In re Neale*, 3 N. B. R. 178; *Hall* v. *Whiston*, 5 Allen, 127; *Butler* v. *Mullen*, 100 Mass. 455; *Stevens* v. *Mechanics'*, *etc.*, 101 Mass. 110; *Zantzinger* v. *Ribble*, 36 Md. 33; *Conner* v. *Long*, 104 U. S. 239; *Bank* v. *Sherman*, 101 U. S. 406.

On the part of the defendant it is claimed (1) that the realty at the date of proceedings in bankruptcy belonged in fact to the wife of Joseph Cain, and that he held the title in trust for her, and hence the same did not pass to the assignee; (2) that the assignee, having failed to take possession of the property, or assert any right thereto, for over six years after the adjudication in bankruptcy, is barred of any right or title therein by the provision of the bankrupt act, which enacts that "no suit at law or in equity shall be maintainable in any court, between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee;" (3) that if not barred as a matter of law by the limitation just cited, nevertheless the assignee and his grantee are estopped from asserting any right or title to the premises in question, for the reason that the assignee allowed the bankrupt to remain in possession of the premises, did not assert any right thereto, and permitted the bankrupt to sell the property to defendant, who bought the same in good

faith, paying full value therefor, and that the assignee has never in fact asserted a claim to the property for the benefit of the estate.

All the evidence adduced to show that the realty in dispute belonged to Mrs. Cain at the time the petition in bankruptcy was filed, is found in the testimony of Joseph Cain, who testifies that shortly after his marriage he made a gift of the property to his wife. He did not execute a conveyance of the property to her, but simply handed her the patent, saying that he had bought the land with his first earnings, and wished her to have it. While, as between the husband and wife, this gift may have taken effect so that the husband held the property as her trustee, yet, as it appears that the husband was then in debt, such a transaction cannot be held valid as against creditors of the husband. In other words, the assignee, as the representative of the creditors, could, had he so chosen to do, have held the property under the deed of assignment for the benefit of the creditors. If, however, the creditors, through the assignee, did not assert their right to the property within the time limited by the terms of the bankrupt act, then it may be that Mrs. Cain can assert her title or right to the property. The evidence shows that she joined in the granting clause of the deed to Harvey E. Buck, under whom the defendant claims, and therefore all her title and right, whatever it may be, has passed to the defendant.

By the express provisions of the bankrupt act, it was made the duty of the assignee to bring suit for the recovery of property belonging to the estate and not in his possession within two years after the cause of action accrued to him. A failure on his part to do so would bar his right to maintain an action at law or in equity, except in cases where the relief sought is against a fraud practiced by the opposing party. *Bailey* v. *Glover*, 21 Wall. 342.

In the case at bar it appears that the assignee did not take possession of the property in question, or assert any right thereto, or do any act affecting the property, for more than six years after the adjudication in bankruptcy. This delay would bar his right, or that of one in priority with him, unless such delay was caused by fraud or deceit on part of defendant or those under whom he holds title. The only fact tending to sustain the charge of fraud is the failure on part of Joseph Cain to schedule this land as part of his assets in the bankruptcy proceedings. Cain, however, claimed that the property in fact belonged to his wife, and hence did not pass to the assignee. The title to the land stood in the name of Joseph Cain, upon the records of the county in which it is situated, for more than four years after the assignee was appointed. It does not appear that the assignee ever examined the bankrupt touching his property, or that either the bankrupt or his wife ever made any false statement to the assignee about the property. While the assignee may not have known that the property could be subjected to the debts due creditors, yet it does not appear that the bankrupt or his wife took

any steps to conceal the property, or deceive the assignee in regard to the same. Certainly nothing is proven affecting the good faith of the defendant. When actual knowledge of the fact that the title of this land stood in the name of the bankrupt was brought home to the assignee, he took no steps to assert any right thereto.

It is shown in the testimoney of Joseph Cain that, shortly after the sale of the property to Buck, the assignee had a conversation with him in regard to the property. It was fully within the power of the assignee to have examined both the bankrupt and his wife touching their rights to this property, yet he did not do so, but permitted the sale to Buck to stand without objéction. It is true that it is agreed in the stipulation signed by the parties that the assignee did not have actual knowledge or notice of the fact that Cain owned or held the title to the land until in January, 1883, yet it would appear that he had notice of facts sufficient to make it his duty to inquire into the condition of the property. What inquiry he did in fact make does not appear. The assignee died in December, 1883, and we have not the benefit of his testimony, but it does appear that he took no action looking towards the assertion of any right on his part to the land.

In January, 1883, the final schedule of assets left unsold was prepared for submission to a meeting of the creditors, but this land was not included therein. At the meeting of the creditors, when the matter was called up, he did not add it to his schedule as property belonging to the estate. At the request of a creditor he did put up for sale whatever interest he might have in the property, but it is clear that he did not claim the property as belonging to the estate, or else he was derelict in his duty as assignee. The property in question was worth sixteen hundred dollars. It was then occupied by an adverse claimant, and it was his duty, if he wished to sell it, to procure an order from court for that purpose, after notice given to the adverse party. No order for sale was procured, nor was any notice given that it would be sold. It was ostensibly put up for sale at auction, without notice, and knocked down to plaintiff for the sum of $10. When the assignee came to execute a deed to plaintiff he was careful to avoid asserting that he had ever claimed any right to the land. Thus, in the recitals of the deed, as prepared for his signature, it was recited that "whereas, on the date last aforesaid, the said bankrupts, or some one or other of them, were possessed of or entitled to an interest in the real estate hereinafter described;" but the assignee interlined between the words "were possessed" the following, "as it is said and alleged;" and in the recitals of what was offered for sale, he interlined the words "such interest as he might have as assignee as aforesaid,"—thus clearly showing that he did not intend to assert a claim to the title of the land. In fact, it cannot be believed that the assignee would have sold the premises in question for the

merely nominal sum of $10 had he believed that the property belonged to the estate. The facts show that the assignee did not regard the estate as really having any interest in the premises, and for this reason he asserted no right thereto. Under these circumstances he would not only be barred by the statute of limitations, but would also be estopped from asserting a right to the premises against a *bona fide* purchaser for value.

It is for the assignee to determine whether or not, in a given case, he will assert his right to property. He may elect not to charge the estate with the burden of looking after property. This election he must exercise within a reasonable time. A failure to do so may, as against third parties, be construed as an election not to claim the property. *Amory v. Lawrence*, 3 Cliff. 523; *Smith v. Gordon*, 6 Law Rep. 313; *Oakey v. Gardiner*, 2 La. Ann. 1005.

If an assignee neglects or refuses to take charge of a given piece of property for such a length of time as would indicate that he did not intend to assert a right thereto, and the bankrupt being left in possession thereof sells it to a third party, who buys in good faith, the assignee may be estopped from afterwards asserting his right thereto. In the case at bar, the title of the realty in question was in the name of the bankrupt, and it so remained for over four years after the appointment of the assignee. The bankrupt act makes it the duty of the assignee to record the deed of assignment within six months in every registry of deeds or other office within the United States where a conveyance of any lands owned by the bankrupt ought by law to be recorded. While it may be true that a failure to record the deed does not necessarily defeat the title of the assignee, yet it is a fact tending to show that the assignee does not assert a right to any land within a given county, because if he does assert such right, then he should record the deed.

In the case at bar the title to the realty in question was in the name of the bankrupt, and so remained upon the records of the county for over four years after the appointment of the assignee, yet he did not take possession of the property, or record the deed of assignment. In April, 1881, the property was sold to Harvey E. Buck by the bankrupt, and the deed put upon the record; and in October of the same year the defendant bought the property, paying $1,650 therefor. In January, 1883, when the attention of the assignee was directly called to the property, he did not take the steps necessary to assert his right to the property, nor did he seek to give the estate the benefit of the property. So far as his own action is concerned, he clearly indicated that he did not intend to assert any claim to the property. The fact that when asked to do so he put up the property for sale at auction, without giving any notice thereof, or taking any steps to realize upon the property, and knocked the same down at the nominal sum of $10, does not show that he really, and in good faith, deemed

the property to be part of the assets of the estate. Under these circumstances the assignee should now be estopped from asserting any right or title to the property against the defendant.

The plaintiff stands in no better position than the assignee. He holds under a quitclaim deed, and cannot therefore be heard to assert that he is an innocent purchaser. He takes just the right and title his grantor had, subject to all the equities existing and available against the assignee. *Oliver* v. *Piatt*, 3 How. 363; *May* v. *Le Claire*, 11 Wall. 217.

Moreover, when the quitclaim deed was executed to plaintiff, the defendant was in possession of the land, holding under deeds of warranty duly recorded. The plaintiff, therefore, can assert no greater or better right than could the assignee, and unless the latter could recover possession of the land, his grantee cannot.

Judgment for defendant.