## In re MALCOM.
### No. 1387.

District Court, E. D. Illinois.
Feb. 4, 1943.

676

Charles Wallace, of Charleston, Ill., for debtor.

H. Ogden Brainard, of Charleston, Ill., for petitioner.

LINDLEY, District Judge.

Petitioner seeks an order reopening the bankruptcy estate of Henry Malcom, in order that an alleged cloud upon her title to three tracts of land, herein designated A, B and C, may be cleared.

Malcom, prior owner, was adjudged bankrupt in 1931. A trustee was appointed February 4, 1931. Three appraisers, duly appointed, on March 3, 1931, valued A at $1190, B at $1250 and C at $250. A was mortgaged for $2000 and B for $1500 the mortgages being in default. Tract C was free of encumbrance.

On March 12, 1931, the trustee's petition for appointment of attorneys to advise it in abandoning or otherwise disposing of the land was granted. However, none of the tracts was ever sold or formally abandoned. The trustee's final report showing no assets received or paid out was approved on September 6, 1932, and the trustee discharged. On September 30, 1932, the referee's final report was approved by the court, the referee discharged from further responsibility and the estate closed.

On February 18, 1935, the bankrupt conveyed all the land to Rufus Alexander, mortgagee, in satisfaction of the mortgage indebtedness. On March 1, 1939, Alexander sold and conveyed the land to Hugh McConnell and Agnes McConnell, as joint tenants. Subsequently, Hugh McConnell died, title to the land then vesting in petitioner.

Mrs. McConnell claims that the failure of the trustee to abandon formally or to sell the property has created a cloud on her title, preventing her from mortgaging or selling the land and, consequently, petitions to reopen the case and have the land either abandoned or sold. The question immediately arises as to whether, in view of the failure of the trustee to abandon, the facts are such as to amount to abandonment. If this can be answered affirmatively there is no necessity of reopening.

In First National Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 208, 49 L.Ed. 408, the trustee had been discharged. The bankrupt had failed to inform the trustee or the court of a claim that he had against a third party and subsequently, brought an action to recover on it. The court declared that the right of action had passed to the trustee, and disposed of the question whether it had been retransferred to Lasater upon termination of his bankruptcy proceedings, thus: "We have held that trustees in bankruptcy are not bound to accept property of an onerous or unprofitable character, and that they have a reasonable time in which to elect whether they will accept or not. If they decline to take the property, the bankrupt can assert title thereto. * * * But that doctrine can have no application when the trustee is ignorant of the existence of the property, and has had no opportunity to make an election. It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it."

It is clear, therefore, that there can be no implied abandonment if the trustee does not know of the existence of the undisposed of property. However, the plain implication of the decision is that if the trustee had known of the claim and then failed to sell or abandon it formally, an abandonment would have been effectuated.

In a similar case, Dushane v. Beall, 161 U.S. 513, 16 S.Ct. 637, 639, 40 L.Ed. 791, the court said: "If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee, by definite declaration or distinct action, or forbearance to act, indicates, in view of the

particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in Smith v. Gordon, he, with such knowledge, 'stands by without asserting his claim for a lapse of time, and allows third persons, in the prosecution of their legal rights, to acquire an interest in the property,' then he may be held to have waived the assertion of his claim thereto."

The language of Chief Justice Fuller very strongly implies that if property may properly be abandoned and the facts reflect an intent by the trustee to abandon, his failure to act will ordinarily be regarded as sufficient to constitute abandonment.

In Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915, among the known assets were listed memberships in stock exchanges, their total values being approximately $6000, while the bankrupt's debts to the exchanges exceeded $29,000. The seats were held subject to a rule that membership was suspended until such debts were paid. At the time of the discharge of the bankrupt, the memberships were of no value to the estate. Subsequently the bankrupt paid the assessments due on the memberships and all the money due the exchanges and was re-elected to membership. At that time. the value had increased to about $26,000 and the assignees petitioned to have the memberships sold.

The court held that the assignees had abandoned the property and that title had reverted to Yerkes; that inasmuch as the assignees were not bound to accept onerous and unprofitable property, by their failure to take steps to obtain administration upon the memberships, they were barred from claiming any interest therein. The court assumed that the assignees regarded expenditures for the payment of dues and charges as unjustifiable.

In Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609, the owner of a patent had gone into bankruptcy. Though he failed to list the patent as an asset, feeling it was worthless, before the estate was wound up, one Sessions, desirous of buying the patent, asked the assignee what he proposed to do about it. The assignee replied that the estate was settled and that he had no power to do anything and that the bankrupt was the only person who could convey title. Relying on this, Sessions bought the patent from the bankrupt. The court, repeating that the assignee was not bound to accept property, if in his opinion it was worthless or would prove burden-

some, held that in view of his knowledge of the bankrupt's ownership of the patent and the assignee's statement that Sessions should see the bankrupt about purchasing it, the assignee had abandoned all interest in the patent.

In Schram v. Tobias, D.C.E.D.Mich., 40 F.Supp. 470, 471, defendant bankrupt scheduled all assets including 35 shares of stock. The trustee's final report was that the estate was without valuable assets and that "the stock scheduled by the Bankrupt has no value for this estate." After the estate was closed suit was brought to recover from defendant a statutory liability on the stock. In holding title in defendant, the court said: "A trustee in bankruptcy * * * has the right to elect to abandon same, and such abandonment need not be by express order where, as here, the facts clearly indicate that the trustee never accepted or exercised any right of title to the stock in question and stated that it 'had no value for the bankruptcy estate.'"

In In re Wattley, 2 Cir., 62 F.2d 828, certain securities had been deposited, at the time the estate was closed, in the files of the court. The court, holding there had been abandonment, said at page 829 of 62 F.2d: "We must decide first whether the trustee did abandon this stock. As to that there seems to be no doubt that he did. He considered it worthless; asked leave to abandon it; was authorized to do so; was directed to deposit it in the files of the court; complied; and thereafter proceeded to wind up his trusteeship as though the stock formed no part of the bankrupt's estate. This points clearly to his intention to relinquish whatever title he had as trustee."

In Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, 31 certiorari denied 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561, discussing the problem of abandonment, the court said: "When property of the more ordinary type has been owned by a bankrupt, the complete title passes to the trustee, * * *. Some property, however, may carry such burdens that the trustee is not obliged to accept, but has an election to accept or reject, and the title does not pass to and vest in him in the same unconditional way. Where there is property of this character, it would seem that the title passes to the trustee upon condition subsequent. If he decides not to accept, the implied condition is broken and the title revests in the bankrupt—if

indeed there has ever been more than a tender of the title. In the event of such rejection, it is clear that no formal conveyance by the trustee to the bankrupt is required. Sessions v. Romadka, 145 U.S. 29, 39, 12 S.Ct. 799, 36 L.Ed. 609."

Applying these principles to an application for a patent pending at the time of bankruptcy, of which the trustee knew, the court stated: "Clearly, it is for the trustee to decide whether or not he will take on this certain burden with its contingent benefit. If such a patent application is scheduled, and thus (or, probably, in any other way) comes to the trustee's knowledge, it is clear that, before the amendment of 1926, he had a reasonable time in which to elect. His distinct manifestation, even though wholly by parol, that he thought best not to accept is sufficient to terminate his right of acceptance and to revest the title in the bankrupt. * * * While we find no controlling or persuasive precedent, it seems obvious that if, with this knowledge, he does nothing toward acceptance or prosecution, but permits the estate to be wound up and himself to be discharged as trustee, the reasonable time allowed him for election has expired, with the result that the title again rests in the bankrupt."

In Re Frazin, 2 Cir., 183 F. 28, 32, 33 L.R.A.,N.S., 745, the court announced: "In our opinion, upon principle and authority, a trustee, having the option to assume or reject a lease [if it is burdensome], takes title to such lease only in case he elect to accept it. If he elect to accept it, then, by virtue of the provision of the bankruptcy act already quoted [Act of 1898, sec. 70, 11 U.S.C.A. § 110], the vesting of the title relates back to the date of adjudication. But, if the trustee does not elect to accept the lease, it remains the property of the bankrupt."

In Taylor v. Irwin, C.C.Iowa, 20 F. 615, 620, the court said: "If an assignee neglects or refuses to take charge of a given piece of property for such a length of time as would indicate that he did not intend to assert a right thereto, and the bankrupt being left in possession thereof sells it to a third party, who buys in good faith, the assignee may be estopped from afterwards asserting his right thereto."

In Re Hopkins, D.C.W.D.N.Y., 11 F. Supp. 831, the trustee did not formally abandon certain scheduled property and no order of abandonment was entered. The court's reasons for refusing to reopen the case are rather vague, but apparently it felt that since reopening is discretionary, it should not be permitted if it appears that the estate has been fully administered. Although the court did not say that title had revested in the bankrupt by virtue of the trustee's acts, it would seem that such is the only logical conclusion, if the bankrupt's allegations to the effect that there had been no order of abandonment was true. If this construction of the decision be correct, the case is squarely in point. The only difference is that in the case here petitioner is a purchaser from the grantee of the bankrupt, while in the cited case the bankrupt was petitioner.

Although not precisely in point, In re Miners Mills Coal Mining Co., D.C.M.D. Pa., 30 F.Supp. 597, 598, is interesting. There, the trustee petitioned to disclaim the real estate and the referee confirmed the disclaimer in "somewhat unusual wording." The estate was then closed. Subsequently the trustee found a buyer for the property disclaimed, and sought to reopen in order to sell it. The court denied the relief, saying: "Disclaimer does not require any formal acts on the part of the trustee but consists of the refusal of the trustee, manifested by some act or acts and subject to the control of the Court, to administer assets of the bankrupt estate. * * * Here the trustee filed a petition to disclaim; a hearing was duly held thereon after notice to all interested parties; the referee entered an order which, although containing somewhat unusual wording, clearly approved the petition; the case was duly closed in proper form, and the trustee was discharged. The trustee intended to and did relinquish whatever title he had as trustee. * * *

"Since there had been a valid disclaimer of the property, there remained no interest in the property which could be sold by the trustee and hence, Weir's petition did not disclose any cause for reopening the case. It follows, therefore, that the Court was without jurisdiction to reopen the case and its order reopening the case is void and of no effect."

One case which, at first glance, appears contrary to the rule announced in the cited cases is Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28. There, bankrupt listed a number of wildcat oil leases as assets, and, in closing the estate, the trustee reported that he had tried to sell them, had failed, and that in his opinion such leases were

worthless. Subsequently oil was discovered and the leases became valuable. On petition of creditors the case was reopened and a new trustee appointed. Previous to this, a state court receiver had sold the leases to defendants, who claimed that the original trustee had abandoned the leases. The court held for plaintiffs, stating there was no abandonment by the trustee, basing its conclusion on the fact that, although the trustee had said the leases were worthless, they had been paid for, still had about sixteen years to run and were incumbered by no taxes, rentals, expense or adverse claims. The court felt that the facts were such that the assets could not be considered abandoned. The court recognized, however, that the question of abandonment is one of fact, stating that merely closing proceedings without formal abandonment does not necessarily constitute an abandonment, but implying that on different facts there might be an abandonment.

■ Under Section 70, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a, a trustee is vested with title to the bankrupt's property. However, it frequently occurs that some of the assets are worthless, so far as any benefit to the creditors is concerned. To facilitate administration, eliminate unnecessary expense and relieve the trustee, he is permitted within a reasonable time, to reject any property which is onerous or nonprofitable or constitutes a burden upon, rather than a benefit to the estate. First National Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408; Sparhawk v. Yerkes, 142 U.S. 1, 12 S.Ct. 104, 35 L.Ed. 915; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28; In re Frazin, 2 Cir., 183 F. 28, 33 L.R.A.,N.S., 745; Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28; 4 Collier on Bankruptcy (14th Ed. 1942) 1215.

■ Abandonment completely divests the trustee of all right in the property. The title is thenceforth regarded as the bankrupt's just as if he had never been in bankruptcy. Whether the title passes to the trustee and revests in the bankrupt (In re Webb, 4 Cir., 54 F.2d 1065), or never passes from the bankrupt, since the trustee rejects the title, (In re Frazin, 2 Cir., 183 F. 28) is of no importance here. In either event, the title of the trustee to such abandoned property is so irrevocably lost, that no subsequent enhancement in its value will give the trustee a right to reclaim it. Meyers v. Josephson, 5 Cir., 124 F. 734;

In re Webb, 4 Cir., 54 F.2d 1065; 4 Collier on Bankruptcy (14th Ed.) 1223.

■ The Bankruptcy Act does not prescribe the method of abandonment; but the better practice is to require proposed abandonment to be submitted to the court, after notice and a hearing. 4 Collier on Bankruptcy (14th Ed. 1942) 1219; see Matter of Humeston, 2 Cir., 83 F.2d 187; Lincoln National Life Insurance Co. v. Scales, 5 Cir., 62 F.2d 582. But we are not concerned with what is the best method, but with whether there can be an abandonment by failure of the trustee to act instead of by order of court.

■ The authorities quite logically indicate that abandonment of property by the trustee results where the evidence reflects not only failure to administer property but also an intent to disclaim.

Mere failure formally to abandon may not be enough but when coupled with proof of intent on the part of the trustee to abandon it is sufficient. Dushane v. Beall, 161 U.S. 513, 515, 16 S.Ct. 637, 40 L.Ed. 791; Schram v. Tobias, D.C.E.D.Mich., 40 F. Supp. 470, 472; In re Wattley, 2 Cir., 62 F.2d 828, 829; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, 32. Thus, an expression by the trustee that he intends to abandon (Sessions v. Romadka, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609; Schram v. Tobias, D.C.E.D.Mich., 40 F. Supp. 470), or failure of the trustee to act, when he has knowledge of the existence of property is sufficient. Taylor v. Irwin, C.C.Iowa, 20 F. 615; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28; see Dushane v. Beall, 161 U.S. 513, 515, 16 S.Ct. 637, 40 L.Ed. 791.

■ Here the trustee clearly indicated an intention to abandon A, B and C, by the petition for appointment of attorneys to advise upon such subject matter. Two of the tracts were hopelessly encumbered, and the third of no tangible value. No order of abandonment was made, and when the case was closed, nothing was done about these tracts,—indeed, thereafter, for over ten years nothing was done, although the land had been scheduled as a part of the bankrupt's estate and both the trustee and the creditors knew of its existence and condition. These facts lead irresistibly to the conclusion that the trustee intended to abandon the property. Thereby the land passed from the trustee, the creditors, and the court, to the bankrupt. When the

680

bankrupt conveyed it to his mortgagee in satisfaction of the mortgage indebtedness, after he had been discharged, he made a conveyance free and clear of any claims of the trustee. Upon that title petitioner had a right to rely. No one may, in the face of such facts, rightfully impeach it. Consequently there is no reason or necessity to reopen in order to remove a nonexistent cloud of title. In re Miners Mills Coal Mining Co., D.C.M.D.Pa., 30 F.Supp. 597, 598; see In re Hopkins, D.C.W.D.N.Y., 11 F.Supp. 831.

Some question may be raised as to the abandonment of C since, at the time the estate was closed, it was clear of encumbrances, and was valued at $250. The record is silent as to whether the trustee attempted to sell and could find no buyers, or whether the actual value was such that the trouble and expenses necessary to sell would leave nothing of value to the estate. At all events, it is clear that the trustee intended to abandon it. The trustee asserted no dominion over the tract. He closed the estate and stood by for ten years, observing the bankrupt's assertion of title and his conveyance to the mortgagee and the latter's claim of title and conveyance to petitioner. It is far too late to assert any interest in the property. In view of the law as applied to the presented facts, petitioner's title is perfect and unimpeachable. The alleged cloud upon it is without life or force. Hence, to reopen the estate would be to incur needless expense without any resulting benefit to any one.

The petition is denied.