IN THE MATTER OF THE PAYMENT OF UNCLAIMED DEPOSITS IN THE SUPERIOR COURT OF NEW JERSEY TO THE STATE TREASURER FOR THE USE OF THE STATE OF NEW JERSEY AND TO CLAIMANTS BY THE STATE TREASURER. (CLAIM OF JOSEPH G. ENGEL.)

Superior Court of New Jersey
Appellate Division

Argued May 27, 1957—Decided June 10, 1957.

Before Judges Goldmann, Freund and Conford.

*Mr. Joseph G. Engel* argued the cause for plaintiff-appellant.

*Mr. Christian Bollermann,* Deputy Attorney-General, argued the cause for defendant-respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General, and *Mr. Charles J. Kehoe,* Assistant Deputy Attorney-General, attorneys).

The opinion of the court was delivered by

CONFORD, J. A. D. ▮ On February 28, 1928 a surplus of $4,217.78 arising from the sale on *fieri facias* by the sheriff of Essex County of certain mortgaged property, then in foreclosure, was paid into the office of the clerk of the former Court of Chancery. Having been unclaimed for over ten years, this sum, with accretions of interest increasing the total to $6,552.05, was subsequently paid the State Treasurer for the use of the State as an "unclaimed deposit" under *L.* 1947, *c.* 72, as amended, now *N. J. S.* 2*A*:15–76. The property foreclosed had belonged to William D. Winterbottom and Wilford B. Van Houten, who were adjudged bankrupts October 3, 1917. The bankrupt estate was closed twice, the last time February 6, 1932.

The plaintiff, appellant herein, was appointed and qualified as substituted trustee September 29, 1955, the bankrupt estate having been reopened for the purpose of making claim to the fund referred to. He instituted the present action under authority of *N. J. S.* 2*A*:15–81, which permits any person interested in such a deposited fund "at any time" to bring a summary action in the Superior Court to compel payment of such amount as it shall be determined he is entitled to, but without interest from the date of payment to the State Treasurer. The Chancery Division found, on the basis of facts hereinafter set forth, that a previous trustee in the bankruptcy proceedings had abandoned the interest of the bankrupts in the foreclosure proceedings and that plaintiff consequently had no present interest in the fund in question. He appeals from the judgment dismissing his complaint.

The following additional facts require notice. The real estate foreclosed was not included in the assets originally scheduled. The first trustee was discharged and the estate closed October 21, 1920. The foreclosure was of a mortgage of $300 made in 1910, and the sale was to satisfy a judgment and costs of $820.80. The complaint in the foreclosure proceedings recites that "on May 18, 1926 the said bankruptcy proceedings were reopened * * * and Ernest H. Stauber was appointed * * * as trustee for the purpose

of permitting said trustee to be made a party to this suit."
Stauber was made a party, but the record does not show
that he took any proceedings whatever in the cause or in
relation to the surplus arising from the sheriff's sale. Nor
is there anything before us to indicate that he knew of the
existence of the surplus moneys at any time or that he did
anything in the bankruptcy proceedings prior to his discharge
in 1932. The bill of complaint in the foreclosure proceedings,
filed August 10, 1926, sets out judgments aggregating
$3,426.20, exclusive of interest. The abstract of title filed
in the cause shows a total of 19 judgments unsatisfied of
record, aggregating $8,715.76.

Both sides agree the question for determination is whether
the trustee Stauber abandoned the interest of the bankrupts
represented by the fund now in contention and that this
is a question of fact. 4 *Collier, Bankruptcy* (*14th ed.,
Moore & Oglebay* 1942), § 70b, *par.* 70.42, *p.* 1218; 2 *Rem-
ington on Bankruptcy* (1956), § 1142, *p.* 622; *First Na-
tional Bank of Jacksboro v. Lasater,* 196 *U. S.* 115, 25 *S. Ct.*
206, 49 *L. Ed.* 408 (1905); *Dushane v. Beall,* 161 *U. S.* 513,
16 *S. Ct.* 637, 40 *L. Ed.* 791 (1896); *Sparhawk v. Yerkes,*
142 *U. S.* 1, 12 *S. Ct.* 104, 35 *L. Ed.* 915 (1891). While
there is some support for the view that abandonment cannot
be spelled out from mere inaction of the trustee or creditors
without an order of the court, see *In re Mirsky,* 124 *F. 2d*
1017 (2 *Cir.* 1942), *certiorari* denied 317 *U. S.* 638,
63 *S. Ct.* 29, 87 *L. Ed.* 514 (1942), the predominant posi-
tion is that a court order is not essential and that action
or inaction of the trustee may, in the particular circum-
stances, evidence abandonment. *Dushane v. Beall, supra*
(161 *U. S.,* at *page* 516, 16 *S. Ct.,* at *page* 639); *Mesirov
v. Innis Speiden & Co.,* 88 *N. J. L.* 548, 551 (*Sup. Ct.*
1916). But, in the absence of a court order, the burden
of proof of abandonment lies heavily with those who assert
it. *Remington, op. cit., supra* (§ 1144, *p.* 625); *Carter
v. Rives,* 9 *F. 2d* 62, 63 (4 *Cir.* 1925).

In the present case there is no direct evidence of the state
of mind of the substituted trustee, Stauber, at any time

during his administration. The only proofs in the record before us are pleadings in the bankruptcy court and in the foreclosure suit. From these it may be inferred that Stauber concluded from the foreclosure bill, or perhaps from the filed title abstract, that the foreclosure was not going to yield any residual equity for the bankrupt estate because of the encumbrances of record whose continued subsistence he apparently did not investigate. It may also be inferred that after coming to that conclusion, he proceeded to ignore the matter entirely. There being no evidence whatever to indicate he actually knew of the surplus money fund, there is no justification for any inference that he actually intended an abandonment of that fund at any time prior to his discharge in 1932.

Respondent relies upon cases holding that an abandoned asset cannot be reclaimed for the bankrupt estate, once abandoned, merely because of its later unexpectedly increasing in value, *Meyers v. Josephson*, 124 *F*. 734 (5 *Cir*. 1903); *Webb v. Raleigh Hardware Co.*, 54 *F*. 2d 1065 (4 *Cir*. 1932); *In re Malcolm*, 48 *F. Supp*. 675 (*D. C. E. D. Ill*. 1943), but these authorities are not helpful, because the rule stated assumes an abandonment, the very issue here presented for determination. In each of the cited cases an abandonment was found by express action or plainly demonstrated intention of the trustee. In the *Malcolm* opinion, *supra*, a good discussion and collection of the pertinent cases, the analysis indicates that it takes a showing of an intent to disclaim where reliance is had upon the trustee's failure to administer property rather than upon an order of abandonment or express rejection of an asset. (48 *F. Supp.*, at *page* 679). Mere inaction by a trustee for three years prior to his discharge with respect to an oil lease then thought worthless was held insufficient to constitute such abandonment as would preclude the reopening of the estate for exploitation of the asset four years later when the lease showed value. *Stanolind Oil & Gas Co. v. Logan*, 92 *F*. 2d 28, 31 (5 *Cir*. 1937), *certiorari* denied 302 *U. S*. 763, 58 *S. Ct*. 409, 82 *L. Ed*. 592 (1938). It was found to be "highly improbable" that the trustee "ever

intended to abandon the lease" (92 *F. 2d,* at *page* 31). *Cf. In re Mirsky, supra.*

The gravamen of the respondent's position is that the circumstances bearing upon the intent of the trustee were sufficient to have supported the factual conclusion of the trial court that the trustee intended to abandon the property under foreclosure during its pendency. Whatever may be thought of that argument, it overlooks the fact that, prior to the discharge of the trustee, the bankrupts' equity in the real estate became commuted into a cash fund concerning which the trustee knew nothing, so far as may reasonably be concluded from the evidence. If it be urged that the fund theoretically derived from the interest in the land, the answer is that symmetry of legal theory must at times bow to practicalities if injustice is to be averted. Realistically, the fund was an entirely different thing from the equity in the land, and since it belonged to the bankrupts, it enured to the trustee. It was the positive duty of the trustee to take the fund unto his administration for the benefit of the creditors of the estate. Granted that his failure to follow the foreclosure proceedings to their conclusion and thus become apprised of a substantial asset of his trust was inexcusable inattention to his duties (upon which it would hardly be seemly for us to express a considered opinion on the present sparse record), this is not relevant to the question as to whether he intentionally surrendered the fund. We do not think the record can fairly support a conclusion that he did. If he was negligent the creditors of the bankrupts should not suffer for it, particularly where no intervening equities of third persons or of the bankrupts have arisen from his inaction. See *Dushane v. Beall, supra* (161 *U. S.,* at *page* 516, 16 *S. Ct.,* at *page* 639). Of course, the trustee's inaction since his discharge in 1932 has no significance, as his discharge ended his responsibility.

The policy of our statute is that the State should surrender unclaimed deposits "at any time" to anyone having an interest in them. We think plaintiff showed such an interest.

Reversed.