**In re Leroy & Minerva BUTLER, Debtors.**

**Bankruptcy No. 82–00431.**

United States Bankruptcy Court, District of Columbia.

Oct. 11, 1984.

■■■■■■■■■■■■■■■■

Kevin R. McCarthy, Washington, D.C., trustee.

Ronald S. Goldberg, Gaithersburg, Md., for debtors.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This matter came before the Court for hearing on the Debtors' objection to the Trustee's proposed abandonment of property of the estate.

### 1. *Timeliness of the Objection.*

■ The first issue presented is whether the Debtor's objection was timely. The Trustee's notice of intention to abandon property was filed on May 24, 1984 and the day before (*i.e.*, on May 23, 1984) the Trustee served a copy of that notice on counsel for the Debtors, the U.S. Trustee, and the creditor to whom the Trustee proposed to abandon the property, Floyd E. Wilhelm ("Wilhelm"). However, the Trustee did not give notice "to all creditors," as required by Bankruptcy Rule 6007(a) in the absence of an order of court restricting notice to some lesser number of entities; nor did he seek such an order. The Advisory Committee Note following Rule 6007 suggests that notice "to all creditors" might be given by incorporating a notice relating to abandonment in the notice of the meeting of creditors. However, this Court did not adopt that suggested procedure until February 1, 1984, long after the notices of the two creditors' meetings held in this case had gone out. Therefore, the notice given to the Debtors' counsel by the Trustee on May 23, 1984 was defective for failure to notify "all creditors." The fact that the Debtors' counsel actually received the May 23, 1984 notice is not sufficient to prevent the Debtors from later objecting after receiving the notice properly, when it was mailed to all creditors. Neither waiver nor estoppel applies. The Debtors' mere inaction in the face of an improper notice does not constitute a waiver of all rights. Nor did the Debtors do anything that might constitute an estoppel. The Trustee's June 8, 1984 letter to Wilhelm, stating that the property was effectively abandoned because no one had objected, was in error, because it was based on an improper notice. The Debtors did nothing to cause the Trustee to send out an improper notice; that mistake was the Trustee's, not the Debtors'.

The Clerk of this Court complied with Bankruptcy Rule 6007 and 11 U.S.C. § 554(a) by mailing copies of the notice to all creditors, as well as to the Debtors and their attorney, on July 12, 1984. The time to file and serve an objection to the proposed abandonment therefore expired on Friday, July 27, 1984. The Debtors' objection was served and filed on Monday, July 30, 1984, one business day late. The Court finds this lateness to be excusable in this case, because it was apparently caused by understandable confusion, contributed to by the language in the notice itself chosen by the Trustee, as to whether or not Bankruptcy Rule 9006(f) applied. Rule 9006(f) allows three additional days for serving and filing a response "after service of a notice or other paper" by mail. However, Rule 9006(f) does not apply in the case of a notice under Rule 6007(a), which clearly provides: "An objection may be filed and served by a party in interest within 15 days of the *mailing* of the notice, or within the time fixed by the court." [Emphasis added.] The notice itself is somewhat ambiguous, however; it provides that an objection must be filed and served "within fifteen (15) days from the date of this notice...." As mailed by the Clerk the notice bears a "Date" of "5/23/84" and a "Date of Mailing" of "Jul[y] 12, 1984." This form of notice does not refer to the date of *mailing;* and its reference to "date" is confusing, in that two separate dates appear on the face of the notice. In view of the above-described confusion and ambiguity, and in the absence of any reliance by the

Trustee on the Debtors' failure to object during the 15-day period ending on July 27, 1984,[1] the Court will not treat the Debtors' one-business-day lateness as resulting in a forfeiture of whatever rights the Debtors may have. Hence, the Court will consider the Debtors' objection on its merits.

### 2. *Abandonment of What?*

■ Some background information is necessary in order to understand what it is that the Trustee proposes to abandon. Wilhelm is a mortgage broker. In early 1982 the Debtors sought his help in obtaining a loan on the security of two tracts of unimproved real property located in New Jersey.

Wilhelm testified as follows: He was unable to find anyone willing to make such a loan, but he himself offered to provide financing in the form of a sale to him with a one-year repurchase option. Therefore, on April 1, 1982 the Debtors as sellers and Wilhelm as buyer entered into an agreement of sale of the two tracts for $33,000, of which $26,000 was allocated to the tract now at issue. A deed was signed on April 2, 1982. The option permitted the Debtors to repurchase both tracts for $47,000, with the repurchase price for the tract now at issue being $37,000. The repurchase option expired by its terms in April 1983 (presumably on April 2, 1983), and on or shortly before its expiration date Wilhelm wrote out an agreement (1) acknowledging that the Debtors had indicated that they wanted to exercise the option, and (2) calling for them to close on the option within 60 days. That extension agreement expired in June 1983.

The effect of this agreement was, of course, to extend the option period for that 60 days, until sometime in June 1983, (presumably June 1, 1983.) Unfortunately, the parties have not made either the option agreement or the extension agreement a part of the record of this case. The Court

relies therefore on Mr. Wilhelm's unchallenged testimony.

Meanwhile, about four months after entering into the transaction for a sale-with-repurchase-option, the Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code. Their case was converted to Chapter 11 on October 26, 1982 and to Chapter 7 on January 27, 1983. As noted above, the option expired by its terms in April 1983. This was more than 60 days after the case was converted to Chapter 7, and thus nothing in the bankruptcy law would serve to extend the option period by operation of law. *See* 11 U.S.C. §§ 108(b), 348(c) and 365(d)(1). The Trustee did nothing to extend the option period; but, as noted above, Wilhelm, dealing with the Debtors and for their benefit, did in effect extend the option period for 60 days. However, the Debtors did not exercise the option during this additional 60-day period.

Instead, the Trustee and Wilhelm entered into a "Compromise Agreement," under which "Wilhelm will sell the properties but will remit [to the Trustee] the surplus of any net proceeds after the option price of $47,000 [for both tracts], plus standard settlement costs, plus any expenses incurred to perfect title, plus taxes in excess of $3,000, plus interest at 12% from June 1, 1983." The compromise agreement recited that the original sale of both parcels may have been voidable under 11 U.S.C. § 548 because the Debtors "received less than a reasonably equivalent value" for the two parcels.

The compromise agreement also provided that "the Trustee shall not attempt to exercise the [Debtors' repurchase] option." But it is obvious that the compromise agreement, on behalf of the estate, in effect realized and extended after June 1, 1983 the benefit of the Debtors' original repurchase option bargain. This is true for the following reasons: The repurchase option would have had the effect, if exercised,

---

**1.** An entirely different case would be presented had the Trustee notified Wilhelm on July 28 or 29, instead of on June 8, 1984, that no objections had been filed, and had Wilhelm acted in reliance on such notification. Then there would be reliance by the Trustee and by Wilhelm on the Debtors' (and others') failure to object during the relevant period for objecting.

of giving the Debtors the benefit of any excess value of the property over the option price. The right to that excess value passed to the bankruptcy estate when the petition was filed. The Chapter 7 Trustee had a duty to liquidate the estate by selling non-cash assets, including the realty now at issue. Thus, the compromise agreement, if fully carried out, would have been the functional equivalent of an exercise of the repurchase option followed by a sale of the asset. The following facts also show that the compromise agreement was based on and had the effect of extending indefinitely the time for exercise of the option (as modified by the compromise agreement): The original option price was the base figure for computation of the amount of sale proceeds to go to Wilhelm under the compromise agreement. To be added to that base figure was, *inter alia*, "interest at 12% *from June 1, 1983*", which was (approximately) the date on which the option (as extended) expired. [Emphasis added.] Thus, the amount Wilhelm was to receive would always be based on the original option price.

The compromise agreement became effective on July 6, 1983, after expiration of a ten-day notice period during which neither the Debtor nor any creditor filed objection. Pursuant to the compromise agreement, Wilhelm sold the second tract of land for $13,500, of which the Trustee received $1,894.91 under the formula set out in the agreement.

The compromise agreement contained no time limit for Wilhelm to sell the remaining tract of property, nor any provision as to what was to happen if Wilhelm failed to sell that tract either (1) within any given time period, or (2) at a price sufficient to generate funds for the estate. Some ten months after the compromise agreement took effect, Wilhelm, on May 21, 1984, notified the Trustee that he had received an offer which he desired to accept (in view of the lack of any other viable offer) but which was insufficient in amount to generate any funds for the estate (and indeed insufficient to cover the full amount due to Wilhelm himself under the compromise

agreement). The Trustee thereupon filed his notice of intention to abandon the "Trustee's claim to proceeds from sale of [the subject] property per Compromise Agreement ..." The Trustee stated that he believed "it is impractical to require Mr. Wilhelm to continue to market the property ...", thus clearly implying that under the agreement Wilhelm *could* legally be required "to continue to market the property" for an indefinite future time.

### 3. *The Objection to Abandonment*

The Debtors' written objection to the Trustee's proposed abandonment states their opinion "that the property has substantial equity value ...", and therefore (presumably) the Trustee should not abandon his rights but should require Wilhelm to continue to market the property until a higher price is obtained. However, at the hearing the Debtors failed to produce evidence sufficient to persuade this Court that the property has value in excess of the amount due to Wilhelm under the compromise agreement. (In his May 21, 1984 letter, Wilhelm calculated this amount, including interest and taxes, to be $45,745.00 as of August 1, 1984.) Although the Debtors presented an estimate of value dated March 28, 1983 by a real estate broker valuing the property at $1,500 per acre, or a total of $144,000 for approximately 96 acres, Wilhelm presented an estimate of value dated August 15, 1984 by the same broker valuing the property at $550–$600 per acre, and also a letter from the same broker dated April 11, 1983 indicating a forced-sale value of "a maximum of $500.00 per acre." Wilhelm also testified that a title defect reduced the actual saleable acreage by about 26 acres. The discrepancy between the substantially contemporaneous $1,500 fair-market-value and $500 forced-sale-value per-acre figures by the same broker is unexplained on the record before this Court. The difference between the 1983 and 1984 valuations by the same broker may perhaps be partially explained as based on a mistake as to zoning in 1983 or a change of zoning between

1983 and 1984 which "effectively limits the subdivision of this tract into two parcels ..." In view of the wide and largely unexplained discrepancies in the broker's figures, and his failure to appear in Court, this Court is not inclined to give credence to any of his various estimates of value.

The only other indications of value are a tax assessment of approximately $56,000, and Wilhelm's failure to market the property at a higher price than $44,000 for approximately ten months.[2] Neither of these is reliable as an indicium of value. Tax assessments are notoriously inaccurate. Large tracts of unimproved realty can be expected to take longer to market than other types of realty. Wilhelm's considerable distance from the property would also make it difficult for him to market the property. Moreover, Wilhelm is an interested party who, under the compromise agreement as structured, had no substantial incentive to sell the property for more than the amount due to him. With the record in this state, and in the absence of any appraisal by either party, this Court is left without sufficient information to make an informed judgment as to value. Hence, the Court must conclude that the Debtors have failed to sustain their burden of proof on the issue of value. Their objection on the basis that there is equity for the benefit of the estate must be overruled.

### 4. *Abandonment to Whom?*

At the hearing the Debtors also requested that they be provided an opportunity, for a thirty-day period, to purchase the property at the option price. As noted above, the repurchase option expired no later than June 1983. If the option still existed on the date of the compromise agreement, it merged into and was extinguished by the provisions of the compromise agreement, including the provision that "The Trustee shall not attempt to exercise the option ..." Thus, the Court

concludes that it cannot grant the Debtors' request as phrased.

However, the legislative history to 11 U.S.C. § 554 indicates that "[a]bandonment may be to any party with a possessory interest in the property abandoned." S.Rep. No. 989, 95th Cong., 2d Sess. 92 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 377 (1978), U.S.Code Cong. & Admin. News 1978, 5787, 5878, 6333. Property which is "deemed abandoned" under § 554(c) is deemed "abandoned to the debtor." *Id.* The 1984 technical amendment to § 554(c) incorporates the "abandoned to the debtor" language into the statute itself, thus lending explicit statutory support to the gloss placed on the statute by the legislative history that abandonment may be "to the debtor" and indeed will be to the debtor unless someone else has "a possessory interest" which should be given precedence over the debtor's residuary rights. Under the former Bankruptcy Act, according to *Collier's*, the better reasoned cases held that abandonment was always "to the debtor." *In re Polumbo*, 271 F.Supp. 640 (W.D.Va.1967); *In re Malcom*, 48 F.Supp. 675 (E.D.Ill.1943); 4A Collier on Bankruptcy (14th ed.), ¶ 70.42, p. 513 *et seq.*

In this case, however, the Trustee seeks abandonment to Wilhelm. In one sense neither Wilhelm nor the Debtors ever had "a possessory interest" in the property sought to be abandoned, that is, the right of the Trustee to excess proceeds of sale of the realty. It is a right which, as the compromise agreement recites, arose by virtue of the Trustee's avoidance powers under 11 U.S.C. § 548. But, as noted above, it is also a right which grew out of and was based upon the amount of the Debtors' repurchase option and was obviously intended to extend the benefit of that option, as modified by the compromise agreement, after the date when the option itself had expired. Thus, this Court concludes that the Trustee's right can be abandoned either to the Debtor or to Wilhelm.

---

**2.** Wilhelm's efforts to market the property while its title was clouded by the Debtors' repurchase option and by the Trustee's claim for avoidance were obviously premature and are not entitled to be included in the computation of Wilhelm's marketing period.

There is no unfairness to Wilhelm in extending for another thirty days (for the Debtors' benefit) the Trustee's rights. Those rights are otherwise of indefinite or limited duration. If (as the Debtors believe) the property has substantial equity, abandonment to the Debtors for thirty days may help them to achieve that "fresh start" which is a major purpose of the Bankruptcy Reform Act of 1978.

NOW THEREFORE IT IS ORDERED that the Trustee is authorized to abandon and by this Order is deemed to abandon the Trustee's claim to proceeds from sale by Floyd E. Wilhelm of the Galloway tract of real property ("the property"); and it is further

ORDERED that such abandonment shall be to the Debtors for a period of thirty days from the date of entry of this Order, and hence the Debtors are hereby authorized and shall have the right during such thirty-day period to purchase the property from Wilhelm at a price computed in accordance with the compromise agreement between the Trustee and Wilhelm; PROVIDED, however, that, in addition to the price as computed, the Debtors shall also pay to Wilhelm an amount sufficient to reimburse him for any reasonable expenses incurred by him in justifiable reliance on the Trustee's letter of June 8, 1984 authorizing Wilhelm to proceed with the proposed sale to other parties for $44,000; and this Court retains jurisdiction to decide any dispute that may arise between the Debtors and Wilhelm concerning the proper amounts to be paid by the Debtors to Wilhelm pursuant to this Order; and it is further

ORDERED that, if the Debtors do not exercise the right hereby granted to them, then, upon expiration of thirty days after the date of entry of this Order, the Trustee is authorized to abandon and by this Order is deemed to abandon to Floyd E. Wilhelm the Trustee's claim to proceeds from sale of the property, so that thereupon the property shall be free and clear of all claims of both the Trustee and the Debtors.